# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00128-CR

**The State of Texas, Appellant**

**v.**

**John William Villegas, Appellee**

---

**FROM THE COUNTY COURT AT LAW NO. 1 OF HAYS COUNTY**
**NO. 100582, HONORABLE ROBERT UPDEGROVE, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

The State of Texas appeals a pretrial order granting the motion to suppress of appellee John William Villegas. In granting the motion to suppress, the trial court concluded that Villegas had been unlawfully detained by a peace officer prior to Villegas's arrest for the offense of driving while intoxicated. In two points of error on appeal, the State asserts that (1) the initial interaction between Villegas and the officer was a consensual encounter rather than a detention; and (2) even if the interaction was a detention, the detention was justified by the officer's community-caretaking function. We will affirm the trial court's order.

## BACKGROUND

The sole witness at the hearing on the motion to suppress was Officer Brady Templeton of the San Marcos Police Department. Templeton testified that on the night of July 18, 2011, he was "dispatched to an accident investigation near the intersection of Posey Road and the access road of IH 35, within the city limits of San Marcos." The dispatch was in response

to a 911 call that had reported that a car had run off the road "into a bar ditch," and that a man had been seen "running from the vehicle." There was also apparently a separate report that the vehicle was on fire.[1] Templeton testified that dispatch had provided him with "an area to respond to" rather than a precise location and that he had arrived at the area at approximately 10:50 p.m. Templeton also testified that dispatch had not provided him with a specific description of the vehicle that had been involved in the accident and that, when he arrived at the area, he had informed dispatch that he was "not sure" if the vehicle at the scene was the same vehicle that had been reported to dispatch. Templeton explained, "Part of the reason I made that statement was because of the position of the car, I couldn't see that it was stuck on top of an object in the ditch or the drainage area in that ditch right there. It didn't appear to be wrecked at first from my angle." He added, "[T]here was no property damage that I could see." Templeton further testified that, in addition to the vehicle not appearing to have been involved in an accident, the vehicle did not have its hazard lights on, its engine appeared to be off, there was no sign of smoke or fire coming from the vehicle, there were no skid marks in the road or grass near the vehicle, and he saw no one in the vehicle exhibiting any sort of distress or seeking help. Templeton also could not tell if the vehicle was actually "stuck." Templeton testified that when he arrived at the scene, he parked behind the vehicle. His patrol car's red and blue emergency lights were activated, and his front-facing lights remained on. The only person Templeton observed in the vehicle was the driver, later identified as Villegas.

A video recording of Templeton's interaction with Villegas, taken from Templeton's patrol-car dash camera, was admitted into evidence. In the recording, Templeton can be seen getting

_____

[1] In addition to the recording of the call to 911, a recording of an officer's call back to 911 was admitted into evidence. In this call, the officer inquires about a report of a vehicle fire in the same area. The 911 operator expresses surprise at the report of a vehicle fire, advising the officer, "We just got a call of a white vehicle that ran off the access road into a ditch."

out of his patrol car and approaching the vehicle, which was pulled over on the side of the road.[2]

Templeton uses what appears to be a flashlight to search the area around the vehicle. When Templeton approaches the driver's side door of the vehicle, Villegas appears to begin opening the door, but Templeton grabs the door from him and finishes opening it himself. As Templeton is doing this, he announces in a loud voice, "San Marcos Police. Are you okay?" Villegas responds, "Yes." Templeton then asks, "Did you wreck out?" Villegas replies, "I'm stuck here." Immediately thereafter, Templeton tells Villegas, "Why don't you step out of the vehicle for me." Villegas complies.

Templeton testified that he had asked Villegas to step out of the vehicle "to make sure he was okay and to figure out if there was indeed smoke coming from the vehicle or if there was a problem with the vehicle." Templeton also claimed that he did so for "officer safety concerns," because "[i]f he's outside of the vehicle, it makes me more comfortable with the situation."[3] Templeton claimed that, when he asked Villegas to step out of the vehicle, Villegas was free to decline and to drive away. Templeton also testified that no signs of criminal activity were observed prior to Villegas exiting the vehicle. When Templeton was asked if, at the time he had inquired into whether Villegas was okay, Templeton had "any suspicion that [Villegas] had committed a crime," Templeton answered, "No."

---

[2] It is difficult for us to determine from the recording whether the vehicle was actually "in a bar ditch" as had been reported to 911. However, the trial court expressly found that it was not, and we defer to that factual determination. *See Montanez v. State*, 195 S.W.3d 101, 109 (Tex. Crim. App. 2006) (holding that "the deferential standard of review in *Guzman* [*v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997),] applies to a trial court's determination of historical facts when that determination is based on a videotape recording admitted into evidence at a suppression hearing").

[3] However, no testimony was elicited as to how this specific situation or Villegas in particular presented a concern to Templeton's safety.

After Villegas had stepped out of the vehicle, however, Templeton then observed signs that Villegas had been drinking. Templeton testified that he proceeded to question Villegas about whether he had been drinking and had Villegas perform field sobriety tests. Subsequently, Templeton arrested Villegas for driving while intoxicated.

Concluding that Villegas had been detained by Templeton prior to his arrest, and that the detention was not justified by either reasonable suspicion or the officer's community-caretaking function, the trial court granted Villegas's motion to suppress. Subsequently, it entered findings of fact and conclusions of law, including the following:

- "By pulling up behind Defendant John Villegas in his motor vehicle with his red and blue flashing lights activated on his marked police car, Officer Templeton detained the Defendant."

- "The Court finds that a display of red and blue flashing lights under such circumstances is a strong showing of authority synonymous with an instruction to stop and remain at the present place, and a reasonable person under the circumstances would not feel free to leave, and the Defendant yielded to the officer's display of authority."

- "The Court finds the officer's testimony that the Defendant was free to leave not credible or reasonable based on the evidence presented to the court, and the officer's subjective intent in turning on his red and blue flashing lights was not relevant to the inquiry of whether the objective facts constituted a detention of the Defendant."

- "At the moment of the detention, there was no reasonable suspicion based upon the totality of specific, objective and articulable facts, and rational inferences from those facts, that the Defendant was committing, had committed, or soon would be about to commit any criminal act, or had a warrant for his arrest."

- "At the inception of the detention, the community-caretaking exception did not justify the detention of the Defendant."

- "At the time of the detention, the Officer did not reasonably believe that the Defendant needed help in that the nature and level of the distress exhibited by the Defendant was non-existent."

4

- "There were no signs of a motor vehicle accident, property damage, skid marks, smoke, fire, injured persons, hazard lights, a disabled vehicle, or that the Defendant or any other person needed any assistance whatsoever."

- "The Court finds that the location of the Defendant was within the City Limits of San Marcos on the side of the road at an intersection (rather than "in a ditch" as referred to be the Officer) and on one of the most heavily traveled roadways in the state and can hardly be considered remote or inaccessible."

- "Similarly, the location of the Defendant gave him access to assistance other than that offered by the officer if he needed it."

- "The Court further finds that at the time of the detention, it was not apparent that the Defendant, if not assisted, presented a danger to himself or others."

- "The Court also notes that when the Officer first spoke to the Defendant, the Defendant stated that he was OK, which further indicated that no assistance was needed, and the officer ordered the Defendant to get out of the vehicle in a manner in which a reasonable person would feel compelled by law to do so."

- "The Court further finds that the dispatch that led the Officer to the scene did not specifically identify the location where the Defendant was ultimately detained, nor did it identify the Defendant and/or his vehicle."

- "The Court finds that at the moment the detention occurred, the information possessed by the Officer did not sufficiently connect the dispatch to the Defendant, and the court's conclusion is based on the Officer's testimony that he was dispatched to a general area with no description of the vehicle and the video which indicates that upon arriving at the scene the Officer indicated on the radio that he was 'in the area' and 'not sure if this was it' and only later, well after the detention occurred and the Defendant was removed from his vehicle did the Officer announce on his radio 'this is going to be it.'"

- "The Court further considered the fact that the dispatch was not consistent with the objective facts that existed when the Officer arrived at the scene."

- "Any evidence seized or acquired at the time of said detention, or at any later time are the product of the unlawful detention . . . and, therefore, said evidence is suppressed and excluded . . . ."

The State appeals the trial court's order suppressing the evidence.

5

## STANDARD OF REVIEW

"In review of a trial court's ruling on a motion to suppress, an appellate court must apply a standard of abuse of discretion and overturn the trial court's ruling only if it is outside the zone of reasonable disagreement." *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011) (citing *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). We are to apply a bifurcated standard of review, giving almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely upon the credibility of a witness, but applying a de novo standard of review to pure questions of law and mixed questions that do not depend on credibility determinations. *Id*. (citing *Guzman v. State*, 955 S.W.2d 85, 87-89 (Tex. Crim. App. 1997)). When reviewing a trial court's ruling on a motion to suppress, we view the evidence in the light most favorable to the ruling. *State v. Robinson*, 334 S.W.3d 776, 778 (Tex. Crim. App. 2011) (citing *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006)). If the trial court makes findings of fact, as it did here, we determine whether the evidence supports those findings. *Id*. We then review the trial court's legal rulings de novo unless the findings are dispositive. *Id*. "We will sustain the trial court's ruling if that ruling is 'reasonably supported by the record and is correct on any theory of law applicable to the case.'" *Valtierra v. State*, 310 S.W.3d 442, 448 (Tex. Crim. App. 2010) (quoting *Dixon*, 206 S.W.3d at 590).

**Encounter vs. Detention**

In its first issue, the State asserts that the initial interaction between Templeton and Villegas was an encounter and not a detention. Therefore, in the State's view, Templeton did not need reasonable suspicion or any other justification to ask Villegas to step out of the vehicle.

6

Encounters are consensual interactions between citizens and police that do not require reasonable suspicion and do not implicate constitutional rights. *See Florida v. Royer*, 460 U.S. 491, 497-98 (1983); *State v. Garcia-Cantu*, 253 S.W.3d 236, 238 (Tex. Crim. App. 2008); *Franks v. State*, 241 S.W.3d 135, 141 (Tex. App.—Austin 2007, pet. ref'd). Encounters occur when police officers approach an individual in a public place to ask questions, request identification, or request consent to search as long as the interaction is consensual—that is, as long as an officer does not convey a message that compliance with the officer's request is required. *See Florida v. Bostick*, 501 U.S. 429, 434-35 (1991) (holding that encounters are consensual if "reasonable person would feel free 'to disregard the police and go about his business'" (quoting *California v. Hodari D.*, 499 U.S. 621, 628 (1991))).

An investigative detention occurs when an individual is confronted by a police officer, yields to the officer's display of authority, and is temporarily detained for purposes of an investigation. *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995); *Franks*, 241 S.W.3d at 141. "Such a seizure occurs when, 'taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Garcia-Cantu*, 253 S.W.3d at 242 (quoting *Kaupp v. Texas*, 538 U.S. 626, 629 (2003)). "It is the display of official authority and the implication that this authority cannot be ignored, avoided, or terminated, that results in a Fourth Amendment seizure." *Id*. at 243. "Each citizen-police encounter must be factually evaluated on its own terms; there are no per se rules. . . . The officer's conduct is the primary focus, but time, place, and attendant circumstances matter as well." *Id*.

Here, the trial court emphasized one fact in particular—the activation of the officer's red and blue flashing lights—and concluded that the display of those lights "under such

7

circumstances is a strong showing of authority synonymous with an instruction to stop and remain at the present place, and a reasonable person under the circumstances would not feel free to leave." This Court has held before that the use of patrol-car overhead lights during a traffic stop, standing alone, does not necessarily constitute a detention. *See Franks*, 241 S.W.3d at 142 (citing *Martin v. State*, 104 S.W.3d 298, 301 (Tex. App.—El Paso 2003, no pet.)). However, the use of an officer's emergency lights "combined with other circumstances, may well establish a Fourth Amendment detention." *Garcia-Cantu*, 253 S.W.3d at 249 n.43. The trial court would not have abused its discretion in finding that "such circumstances" were present here. According to the evidence presented, at approximately 10:50 p.m., Templeton exited IH-35 and parked his patrol car behind Villegas's vehicle, which was pulled over on the side of the access road. The video recording reflects that there was no other traffic on the access road at that time. Then, after parking behind Villegas's vehicle with his overhead emergency lights and his front-facing lights still activated, Templeton approached the vehicle, searched the area around the vehicle with his flashlight, grabbed the driver's side door as Villegas was beginning to open it, announced in a loud voice, "San Marcos Police," and then, after inquiring into whether Villegas was okay, asked or told Villegas, "Why don't you get out of the vehicle for me."[4] Villegas complied. Although Templeton claimed that, at that point, Villegas was free to remain in the vehicle and to drive away, the trial court would not have abused its discretion in finding otherwise, particularly in light of the above circumstances surrounding Templeton's "request" that Villegas exit the vehicle, as well as the fact that,

---

[4] In his testimony, Templeton repeatedly characterizes his statement as "asking" Villegas to exit the vehicle, and that is also how the State characterizes it on appeal. However, the trial court expressly found that "the officer ordered the Defendant to get out of the vehicle in a manner in which a reasonable person would feel compelled to do so." Based on our review of the recording, in which the officer's statement sounds more like a command than a request, we conclude that this finding is supported by the record.

immediately prior to being told to get out of the vehicle, Villegas had just informed Templeton that he was "stuck," and thus, quite possibly, did not have the ability to drive away. Taking into account all of the circumstances surrounding the interaction, we cannot conclude that the trial court abused its discretion in finding that the officer's conduct in this case would have communicated to a reasonable person that he was "not at liberty to ignore the police presence and go about his business," and that, consequently, Templeton had detained Villegas. *See Garcia-Cantu*, 253 S.W.3d at 244-49; *Crain v. State*, 315 S.W.3d 43, 51-52 (Tex. Crim. App. 2010); *Johnson v. State*, 658 S.W.2d 623, 626 (Tex. Crim. App. 1983); *Ebarb v. State*, 598 S.W.2d 842, 849 (Tex. Crim. App. 1980) (op. on reh'g). We overrule the State's first point of error.

**Community-Caretaking Function**

Because Villegas was detained without a warrant, his detention can be justified only if, at the moment of the detention, Templeton had reasonable suspicion to believe that Villegas was, had been, or soon would be engaged in criminal activity, or, if not, that some other exception to the warrant requirement applied. *See Terry v. Ohio*, 392 U.S. 1, 21-22 (1968); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005); *Wright v. State*, 7 S.W.3d 148, 150 (Tex. Crim. App. 1999). In this case, the State does not dispute that, at the moment of the detention, Templeton lacked reasonable suspicion to believe that, Villegas was, had been, or soon would be engaged in criminal activity.[5] Instead, in its second point of error, the State asserts that the detention "was justified under Officer Templeton's community-caretaking function, negating the need for reasonable suspicion."

---

[5] In fact, Templeton denied having "any suspicion that [Villegas] had committed a crime" immediately before telling Villegas to get out of the vehicle.

9

The Supreme Court has characterized a police officer's job as encompassing a community-caretaking function which is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *See Cady v. Dombrowski*, 413 U.S. 433, 441 (1973). "As part of an officer's duty to 'serve and protect,' an officer 'may stop and assist an individual whom a reasonable person, given the totality of the circumstances, would believe is in need of help.'" *Corbin v. State*, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002) (quoting *Wright*, 7 S.W.3d at 151). Whether an officer properly invoked his community-caretaking function requires a two-step inquiry: (1) whether the officer was primarily motivated by a community-caretaking purpose; and (2) whether the officer's belief that the individual needs help was reasonable. *Gonzales v. State*, 369 S.W.3d 851, 854-55 (Tex. Crim. App. 2012). To determine the reasonableness of the police officer's belief that an individual needs assistance, courts are to consider the following non-exclusive factors: (1) the nature and level of the distress exhibited by the individual; (2) the location of the individual; (3) whether or not the individual was alone and/or had access to assistance independent of that offered by the officer; and (4) to what extent the individual—if not assisted—presented a danger to himself or others. *Id*. (citing *Wright*, 7 S.W.3d at 151-52). No one factor is dispositive, and, in some cases, not all factors may apply: "The *Wright* factors were intended to assist courts in determining reasonableness in this context; they are not elements of reasonableness." *Id*.

The issue of whether Templeton was primarily motivated by a community-caretaking purpose was not contested below—Templeton testified that he was responding to a 911 call of a vehicle accident and a possible vehicle fire and that he had no reason to suspect that the person in

10

the vehicle had committed a crime, and this testimony was undisputed.[6] Therefore, in this case, the inquiry turns on the reasonableness of Templeton's belief that Villegas needed help.

In concluding that Templeton's belief that Villegas needed help was not reasonable, the trial court, in its fact findings, focused on the following:

- "At the time of the detention . . . the nature and level of the distress exhibited by the Defendant was non-existent."

- "There were no signs of a motor vehicle accident, property damage, skid marks, smoke, fire, injured persons, hazard lights, a disabled vehicle, or that the Defendant or any other person needed any assistance whatsoever."

- "[T]he location of the Defendant was within the City Limits of San Marcos on the side of the road at an intersection (rather than 'in a ditch' as referred to by the Officer) and on one of the most heavily traveled roadways in the state and can hardly be considered remote or inaccessible."

- "[T]he location of the Defendant gave him access to assistance other than that offered by the officer if he needed it."

- "[A]t the time of the detention, it was not apparent that the Defendant, if not assisted, presented a danger to himself or others."

- "[W]hen the Officer first spoke to the Defendant, the Defendant stated that he was OK, which further indicated that no assistance was needed."

- "[T]he dispatch that led the Officer to the scene did not specifically identify the location where the Defendant was ultimately detained, nor did it identify the Defendant and/or his vehicle."

- "[A]t the moment the detention occurred, the information possessed by the Officer did not sufficiently connect the dispatch to the Defendant, and the court's conclusion is based on the Officer's testimony that he was dispatched to a general area with no description of the vehicle and the video which indicates that upon arriving at the scene the Officer indicated on the radio that he was "in the area" and "not sure if this was it.""

---

[6] Perhaps reflecting the undisputed nature of this fact, the trial court made no express finding concerning the officer's motivation.

11

- "[T]he dispatch was not consistent with the objective facts that existed when the Officer arrived at the scene."

These fact findings are supported by both Templeton's testimony and the video recording of the detention. The testimony and the recording tend to show that when Templeton arrived at the location of the vehicle—which had not been specifically described to Templeton and which Templeton, by his own admission, was "not sure" was the correct location—there were no signs of an accident or a vehicle fire, no property damage to the vehicle, and no indication that individuals were in distress or need of assistance. Also, when Templeton asked Villegas, "Are you okay?", Templeton answered, "Yes." Thus, the trial court could have reasonably found that Villegas did not exhibit any distress at the time of the detention. Additionally, the evidence tends to show that Villegas was pulled over on the side of the access road just off of IH-35, which was, as Templeton acknowledged in his testimony, one of the most well-traveled highways in Texas, and within the city limits of San Marcos, near an intersection. This evidence supports the trial court's finding that "the location of the Defendant gave him access to assistance other than that offered by the officer if he needed it." And, because Villegas was pulled over on the side of the access road as opposed to the actual highway, and because there was no indication at the time of the detention that the vehicle was on fire or otherwise presented a threat to Villegas or passing motorists, the evidence also supports the trial court's finding that, "at the time of the detention, it was not apparent that the Defendant, if not assisted, presented a danger to himself or others."

Although there are other facts in the record which might support a conclusion that Templeton's belief that Villegas needed help was reasonable—including that it was 10:50 p.m. at night, that Villegas was alone in the vehicle, and that he had told Templeton that he was "stuck"—we are to sustain the trial court's ruling if it is "reasonably supported by the record,"

12

and we can overturn the ruling only if it is "outside the zone of reasonable disagreement." *See Martinez*, 348 S.W.3d at 922; *Valtierra*, 310 S.W.3d at 448. Based on the totality of circumstances summarized above, the trial court's determination that Templeton did not have a reasonable belief that Villegas needed help was "reasonably supported by the record" and was not "outside the zone of reasonable disagreement." Accordingly, we cannot conclude that the trial court abused its discretion in finding that the community-caretaking exception to the warrant requirement did not apply to the detention in this case. We overrule the State's second point of error.

## CONCLUSION

We affirm the trial court's order granting the motion to suppress.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Field

Affirmed

Filed: June 20, 2013

Do Not Publish