

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0683-11

**JIMMY GONZALES, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE ELEVENTH COURT OF APPEALS
### TAYLOR COUNTY

KEASLER, J., delivered the opinion of the Court, in which KELLER, P.J., and WOMACK, HERVEY, COCHRAN, and ALCALA, JJ., joined. MEYERS, J., filed a dissenting opinion, in which PRICE, J., joined. JOHNSON, J., dissented.

## O P I N I O N

Before trial, Jimmy Gonzales filed a motion to suppress asserting that his seizure violated the Fourth Amendment of the U.S. Constitution and the Texas Constitution. The trial judge overruled the motion. The court of appeals affirmed and held the seizure was a reasonable exercise of the officer's community-caretaking function. Holding that Gonzales's motion to suppress was properly denied, we affirm the court of appeals's judgment.

## Background

At the hearing, Abilene Police Department Officer Adam Becker testified that just before 1:00 a.m. on August 27th, 2007, while sitting at a red light, he observed Gonzales's vehicle pull off of the road and come to a stop on the shoulder just a short distance ahead. The area where Gonzales stopped was on the way out of town towards the neighboring town, with only a few businesses in the area, no houses nearby, and only light traffic passing by at that time of night. Believing the driver needed assistance, Officer Becker activated both his front-facing and rear-facing overhead red and blue lights to notify Gonzales that it was the police and not "some bad guy" who had pulled in behind him. As Officer Becker pulled onto the shoulder behind the vehicle, Gonzales began to drive away, but quickly stopped. Officer Becker stated that his sole reason for pulling in behind Gonzales was "to check on them, see if they had a flat tire, if everything was okay, if maybe they were lost" and "to see if he was . . . having trouble, if he needed assistance . . . ."

Officer Becker contacted Gonzales and asked him if everything was okay. While speaking with Gonzales he noticed a strong odor of alcohol coming from the vehicle and that Gonzales's eyes were bloodshot and his speech was slurred. Officer Becker then began a driving-while-intoxicated investigation resulting in Gonzales's arrest for that offense.

The trial judge denied Gonzales's motion to suppress and concluded that, while Officer Becker "did not have a reasonable suspicion or probable cause to believe that an offense had been committed," he "was concerned that the operator of the vehicle might need

assistance" and that this belief was reasonable. The trial court entered findings of fact and conclusions of law supported by the record. Gonzales subsequently pleaded guilty to driving while intoxicated and was sentenced and placed on community supervision for five years.

On appeal, Gonzales asserted that he was seized when Officer Becker activated his emergency lights and that his seizure was not a reasonable exercise of Officer Becker's community-caretaking function. The court of appeals held that the use of Officer Becker's emergency lights constituted a seizure, but that the seizure was permissible under the community-caretaking exception.[1] The latter holding is the subject of Gonzales's petition for discretionary review.

## Discussion

### A. Standard of Review for Suppression Motions

When reviewing a trial judge's ruling on a motion to suppress, we view all of the evidence in the light most favorable to the trial judge's ruling.[2] When supported by the record, the trial judge's determination of historical facts are afforded almost total deference.[3] Further, "courts afford the prevailing party 'the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence.'"[4] Almost total deference

---

[1] *Gonzales v. State*, 342 S.W.3d 151, 153–54 (Tex. App.—Eastland 2011).

[2] *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).

[3] *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

[4] *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011) (quoting *Garcia-Cantu*, 253 S.W.3d at 241).

is afforded to a trial judge's ruling on mixed questions of law and fact that depend upon an evaluation of credibility and demeanor.[5]  But when mixed questions of law and fact do not depend on evaluation of credibility and demeanor, we review the trial judge's ruling de novo.[6]  All purely legal questions are reviewed de novo.[7]

## B.  The Fourth Amendment and the "Community Caretaking Function"

"The Fourth Amendment [of the United States Constitution] proscribes all unreasonable searches and seizures, and it is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'"[8]  In *Cady v. Dombrowski*, the United States Supreme Court established what has become known as the "community-caretaking" exception to the warrant requirement in recognizing that police officers may contact citizens "and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a

---

[5]  *Guzman*, 955 S.W.2d at 89.

[6]  *Id.*

[7]  *Woodard*, 341 S.W.3d at 657; *Kothe v. State*, 152 S.W.3d 54, 62–63 (Tex. Crim. App. 2004).

[8]  *Mincey v. Arizona*, 437 U.S. 385, 390 (1978) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)).

criminal statute."[9] But even in light of this newly created exception, the *Cady* Court acknowledged that the Fourth Amendment requires only reasonableness.[10]

In recognizing the community-caretaking function as an exception, we stated in *Wright v. State* that "[a]s a part of his duty to 'serve and protect,' a police officer may stop and assist an individual whom a reasonable person, given the totality of the circumstances, would believe *is in need of help*."[11] However, "a police officer may not properly invoke his community caretaking function if he is primarily motivated by a non-community caretaking purpose."[12] Whether an officer properly invoked his community-caretaking function requires a two-step inquiry: (1) whether the officer was primarily motivated by a community-caretaking purpose; and (2) whether the officer's belief that the individual needs help was reasonable.[13]

To determine the reasonableness of the police officer's belief that an individual needs assistance, we proposed a non-exclusive list of factors that courts may consider: (1) the nature and level of the distress exhibited by the individual; (2) the location of the individual; (3) whether or not the individual was alone and/or had access to assistance independent of

---

[9] *Cady v. Dombrowski*, 413 U.S. 433, 441, 447–48 (1973).

[10] *Id.* at 339.

[11] *Wright v. State*, 7 S.W.3d 148, 151 (Tex. Crim. App. 1999) (emphasis in original).

[12] *Corbin v. State*, 85 S.W.3d 272, 277 (Tex. Crim. App. 2002).

[13] *Id.*

that offered by the officer; and (4) to what extent the individual—if not assisted—presented a danger to himself or others.[14]  While we have stated that the first factor is entitled to the greatest weight, it is not always dispositive.[15]  "A particular level of exhibited distress may be seen as more or less serious depending on the presence or absence of the remaining three factors."[16]  However, the presence of unique circumstances "may swing the balance the other way."[17]  As in all Fourth Amendment cases, the facts unique to each case control its result and, in cases involving the community-caretaking exception, may render certain *Wright* factors inapplicable or afford them varying weight.  The *Wright* factors were intended to assist courts in determining reasonableness in this context; they are not elements of reasonableness.[18]

## C. Analysis

Because neither party contests the court of appeals's holding that Gonzales was seized, we assume, without deciding, that Gonzales was seized under the Fourth Amendment. Gonzales petitioned this Court's review of the following issue: "When an officer undertakes

---

[14]  *Wright*, 7 S.W.3d at 151–52.

[15]  *Corbin*, 85 S.W.3d at 277.

[16]  *Id.*

[17]  *Id.* at 277 n.6.

[18]  *Accord U.S. v. Rodriguez-Morales*, 929 F.2d 780, 785 (1st Cir. 1991) ("In community caretaking cases, as elsewhere, reasonableness has a protean quality.  The term, embodies a concept, not a constant.  It cannot be usefully refined 'in order to evolve some detailed formula for judging cases.'") (citing *Cady*, 413 U.S. at 448).

a 'community caretaking' stop of a motor vehicle, but, prior to the stop, changes his mind about the need to investigate the driver's well being, is a subsequent detention and arrest illegal?"[19]  We understand Gonzales's initial argument, as framed in his petition for discretionary review, to be that Officer Becker was not primarily motivated by a community-caretaking purpose.  In support, he points to Officer Becker's statement that had Gonzales pulled away, rather than stopping or returning to the shoulder, he would have turned off his lights and—as the trial judge described in his findings—"not have tried to stop [the car] or pull [the car] over."  Even acknowledging Officer Becker's response to this hypothetical situation, the trial judge concluded that he was primarily motivated by his public-safety role. We see no reason to second-guess the trial judge's determination of an issue that is supported by the record and depends so much on credibility and demeanor.[20]

Despite Gonzales's framing of this issue, the focus of his argument is whether Officer Becker's exercise of his community-caretaking function was reasonable, and it centers on the court of appeals's alleged misapplication of the *Wright* factors.  Gonzales asserts that, "Officer Becker's belief that [he] needed help was unreasonable because [Officer Becker] did not have sufficient information to reach that conclusion."[21]

---

[19]  Pet. for Discretionary Review 3; Appellant's Brief at 6.

[20]  *See Corbin*, 85 S.W.3d at 277 (holding that, "The trial court, as the exclusive judge of credibility and finder of fact, could have concluded that [the officer] was primarily motivated by community caretaking concerns.").

[21]  Appellant's Brief 10.

Officer Becker observed discernible indicia of distress upon seeing Gonzales pull off the highway around 1:00 a.m. Although he did not know the exact nature of Gonzales's distress, it was reasonable, based on the inferences from his observations and the circumstances surrounding Gonzales's stop, for Officer Becker to believe that when Gonzales pulled off the road at this hour he was experiencing distress—mechanical, health-related, or otherwise. In evaluating reasonableness in this context, courts have never required an officer to know, with any degree of certainty, the specific distress an individual may be suffering.[22] Instead, the proper analysis—as cast by *Wright*—is an objective one focusing on what the officer observed and whether the inference that the individual was in need of help was reasonable. Additionally, these exhibited indicia of distress were compounded by Gonzales's location—the second *Wright* factor—which Officer Becker described as a fairly isolated area.

- It was not "heavily populated;"

- it was on the way out of town towards the neighboring city;

- there were no houses nearby;

- there were only a few businesses in the area; and

- there was minimal traffic on the highway at that hour.

---

[22] *See, e.g.*, *Corbin*, 85 S.W.3d at 278 (examining whether the "indications" of distress were sufficient); *Kuykendall v. State*, 335 S.W.3d 429, 435 (Tex. App.—Beaumont 2011, pet. ref'd) (finding reasonableness in officers' making contact "to make sure the driver is okay, make sure they are not having any kind of medical problem . . . . If they are broke down.").

The third and fourth *Wright* factors respectively weigh whether Gonzales was alone or had access to assistance apart from Officer Becker's and to what extent Gonzales, if not assisted, presented a danger to himself or others. The record is unclear whether Officer Becker knew, or could even see, how many people were in Gonzales's vehicle. But as to Gonzales's access to assistance, the record is clear that Gonzales's location, the time of night, and the light traffic passing by significantly limited his access to assistance.

The fourth *Wright* factor's application to these facts is less straight-forward. We find that this factor should be afforded little weight in light of the unique facts presented by this record. While Officer Becker witnessed indicia of distress, he was unaware of Gonzales's precise distress, much less whether the distress rose to a level of danger to Gonzales or others. As applied here, this factor would force us to assume that danger always accompanies witnessed distress. But in this case, Officer Becker could have reasonably concluded that Gonzales was suffering from distress resulting from car trouble, a flat tire, or running out of gas—a distress no less significant to an officer's function as a public servant.[23]

---

[23] *See* A.B.A., *Criminal Justice Section*, *Standards on Urban Police Function*, 1-2.2 (2d ed. 1980), *available at* http://www.americanbar.org/publications/criminal_justice_section_archive/crimjust_stan dards_urbanpolice.html ("In assessing appropriate objectives and priorities for police service, local communities should initially recognize that most police agencies are currently given responsibility, by design or default, to:
. . .
(e) facilitate the movement of people and vehicles
. . .
(i) create and maintain a feeling of security in the community
. . .

Because of the factor's awkward fit to the circumstances as observed by Officer Becker at the time he seized Gonzales, it should be afforded little weight in this case.

**Conclusion**

We hold that Officer Becker reasonably exercised his community-caretaking function in seizing Gonzales because, under the totality of the circumstances, it was reasonable to believe Gonzales was in need of help.[24] Gonzales's motion to suppress was properly denied. We affirm the court of appeals's judgment.

DATE DELIVERED: June 27, 2012

PUBLISH

---

(k) provide other services on an emergency basis.")

[24] *See Wright*, 7 S.W.3d at 151.