COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| MATTHEW C. COTTEN, | § | No. 08-13-00053-CR |
| Appellant, | § | Appeal from the |
| v. | § | 432nd Criminal District Court |
| THE STATE OF TEXAS, | § | of Tarrant County, Texas |
| Appellee. | § | (TC# 1227020D) |
| | § | |

## **O P I N I O N**

Matthew Cotten appeals the trial court's judgment convicting him of forgery by possession of a forged writing and sentencing him to 30 years' imprisonment.[1]  In three issues, Cotton argues the trial court erred in denying his motion to suppress two inculpatory statements.[2]  For the reasons that follow, we affirm.

### **FACTUAL AND PROCEDURAL BACKGROUND**

In a different case, Cotten was indicted for forgery by possession of a forged writing in late 2010.  While that case was pending, law enforcement officers with the Fort Worth Police Department and the United States Secret Service executed a search warrant at Cotten's residence in January 2011.  Cotten was asleep when officers burst into his bedroom.  After Cotten was

---

[1] Cotten is also appealing the trial court's judgments in four companion cases.  Those cases have been assigned Appellate Cause Nos. 08-13-00051-CR, 08-13-00052-CR, 08-13-00054-CR, and 08-13-00055-CR.

[2] Cotten raises these same issues in the four companion cases identified above.

placed in handcuffs, Detective Matthew Anderson of the Fort Worth Police Department approached him.

Detective Anderson informed Cotten that he was under arrest for the unlawful possession of a firearm discovered on his nightstand during the execution of the warrant. Anderson then read aloud to Cotton from a "MIRANDA WARNING" card printed by the Fort Worth Police Department. Immediately thereafter, Anderson stated, "[w]e're just here talking and want to find out where the stuff is so we don't have to tear even more stuff up" and asked Cotten if he "mind[ed] talking to [them] and pointing [them] in directions?" Cotten replied "[n]o problem at all" and signed the warning card. During the interview with Detective Anderson—who was joined by Secret Service Agents Holloway and Maguire in asking questions—Cotten admitted his involvement in several crimes. Cotten was subsequently transported to the police station for further questioning.

At the police station, Cotten was placed in an interview room. Approximately six minutes later and before any questioning had commenced, the following exchange occurred between Detective Anderson—who was joined by Agent Holloway in the room—and Cotten:

> [DETECTIVE ANDERSON]: Real quick right before I start with you, this is, again, your *Miranda* warning we read to you, correct?
>
> [COTTEN]: Yes, sir.
>
> [DETECTIVE ANDERSON]: To talk to us again, just to keep talking so we can talk to you about some other stuff, I just need you to write the new time there, um 11:50 am, and if you still wish to talk to us, just kinda put an initial right there and then just put the date on top of it, just, 1/12/11 cause this is just continuing the same conversation we started today.
>
> [COTTEN]: Okay.

Cotten initialed the form. During the interview, Cotten further incriminated himself.

2

Cotten moved to suppress his two statements.[3]   The trial court heard the motion and, after listening to testimony and considering the parties' arguments, denied the motion.   Later that day, Cotten entered an open plea of guilty and judicially confessed, but retained his right to appeal the trial court's ruling on his motion to suppress.

## STANDARD OF REVIEW

In reviewing a trial judge's ruling on a motion to suppress a suspect's oral statement, we apply a bifurcated standard of review.   *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex.Crim.App. 2012); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997).   We give almost total deference to a trial judge's determination of historical facts when supported by the record and to rulings on mixed questions of law and fact if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor.   *Gonzales*, 369 S.W.3d at 854; *Guzman*, 955 S.W.2d at 89.   But when the resolution of a mixed question of law and fact do not depend on evaluation of credibility and demeanor, we apply a *de novo* standard of review to the trial court's ruling. *Gonzales*, 369 S.W.3d at 854; *Guzman*, 955 S.W.2d at 89.

## FIRST STATEMENT

In his first and second issues, Cotten contends that the trial court erred in failing to suppress his first statement because its procurement violated his constitutional rights under *Miranda v. Arizona*[4] and statutory rights under Article 38.22 of the Texas Code of Criminal Procedure.

### *Adequacy of Miranda Warnings*

Cotten first challenges the adequacy of the *Miranda* warnings administered to him.

---

[3] Cotten did not file a written motion to suppress in this case, but he did file one in each of the four companion cases. The trial court granted Cotten's oral motion to incorporate into this case the written motions to suppress he filed in the companion cases.

[4] 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Cotten does not argue that Detective Anderson did not provide him with all the warnings required by *Miranda* and Article 38.22. Instead, he asserts that Detective Anderson's failure to read aloud to him the following "waiver" provision from the "MIRANDA WARNING" card rendered his statement inadmissible under "both Miranda and Art. 38.22[:]"

> I HAVE READ AND UNDERSTAND MY LEGAL RIGHTS AS STATED ABOVE ON THIS DOCUMENT. I FREELY, VOLUNTARILY AND KNOWINGLY WAIVE THESE LEGAL RIGHTS, AND AGREE TO BE INTERVIEWED BY POLICE.

We disagree.

As acknowledged by Cotten, neither *Miranda* nor Article 32.22 requires that before a suspect is questioned, he be given a "waiver" warning like the one identified above. *See* TEX.CODE CRIM.PROC.ANN. art. 38.22, § 2(a)(1)-(5)(West Supp. 2013); *Miranda*, 384 U.S. at 479, 86 S.Ct. at 1630. Nevertheless, Cotten asserts that Detective Anderson should have read the "waiver" provision aloud to him to guarantee that he knowingly, intelligently, and voluntarily waived his constitutional and statutory rights. Cotten, however, cites no authority—and we have found none—supporting his assertion. Indeed, Cotten's assertion runs contrary to the general rules that neither a written nor an oral express waiver is required and that waiver can be inferred and need not be express. *Joseph v. State*, 309 S.W.3d 20, 24 and n.5 (Tex.Crim.App. 2010). In addition, by signing the warning card, Cotten acknowledged having received the requisite warnings from Detective Anderson. Accordingly, Cotten has failed to demonstrate that the trial court erred in denying his motion to suppress on the basis that the "waiver" provision was not read aloud to him.

Cotten's first issue is overruled.

***Waiver of Miranda Rights***

4

Cotten next argues that his apparent waiver of his constitutional and statutory rights was, in reality, neither voluntary nor knowing and intelligent. He complains that he was intimidated into making his inculpatory statements, coerced into waiving his rights, and incapacitated when the warnings were read to him. We disagree.

## A. Applicable Law

The State bears the burden of showing by a preponderance of the evidence that a suspect voluntarily, knowingly, and intelligently waived his rights under *Miranda* and Article 38.22. *Joseph*, 309 S.W.3d at 24. "[T]he relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id*. at 25. Additionally, "the waiver must have been made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id*. In making a determination as to waiver, "the totality of the circumstances surrounding the interrogation" must be considered. *Id*. (internal quotation marks omitted).

## B. Discussion

The totality of the circumstances surrounding Cotten's interrogation establishes that his waiver was voluntary. That is, Cotten's waiver resulted from a free and deliberate choice without intimidation, coercion, or deception. Detective Anderson orally advised Cotten of his rights. Those warnings informed Cotten that he had the right to remain silent, that he did not have to make any statement to anyone, and that he had the right to terminate the interview at any time. Immediately after receiving these warnings, Cotten willingly participated in the remainder of the thirteen-minute interview. At no time during the interview did Cotten ask that it be stopped. In fact, Cotten answered all of the questions asked of him. That Cotten did so calmly and

5

matter-of-factly suggests that he provided the information voluntarily.

Furthermore, the record shows no evidence of intimidation or coercion. Cotten contends that he was intimidated by Detective Anderson's threat to tear his home apart and coerced by Detective Anderson's "rapid fire interrogatory techniques coupled with the fact that [he] was barely awake . . . ." The test, however, is whether Cotten's will was "overborne" by Detective Anderson's conduct. *Guardiola v. State*, 20 S.W.3d 216, 223 (Tex.App.--Houston [14th Dist.] 2000, pet. ref'd). Detective Anderson testified that he did not threaten Cotten, and Cotten does not point to anything substantive in the record establishing a causal connection between Anderson's statements and his decision to confess. Indeed, the lack of intimidation and coercion is evident during the interview. As was noted above, Cotten responded that he had "[n]o problem at all" speaking to Detective Anderson and then did so without reservation.

The totality of the circumstances surrounding Cotten's interrogation also shows that his waiver was made with full awareness of both the nature of the rights being abandoned and the consequences of the decision to abandon them. At the start of the interview, Detective Anderson asked Cotten a series of identifying questions. Then Anderson read the warning card aloud to Cotten, making him fully aware of the rights set forth in *Miranda* and Article 38.22, as well as the consequences of abandoning those rights. *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612; TEX.CODE CRIM.PROC.ANN. art. 38.22, § 2. Cotten signed the warning card, thereby ostensibly acknowledging those warnings and indicating that he understood them. Cotten's conduct during the interview likewise demonstrated that he had the requisite level of comprehension to waive his constitutional and statutory rights. Although Cotten can be heard yawning intermittently during the interview, it is obvious that he was alert, appeared to comprehend the warnings and the

6

questions propounded to him, and was coherent and appropriate in his responses.

Cotten maintains that "[his] mental state was diminished [when] Detective Anderson read the warnings to him" because "[h]e was not fully awake." Cotten, however, presented no evidence from an expert establishing that when the *Miranda* warnings were administered to him, his capacity to pay attention and make informed decisions based on the information that was being imparted to him was impaired. Cotten did testify at the suppression hearing that he "was dazed from sleep" and that when Detective Anderson began talking to him, he "wasn't clear on exactly what was going on." But Cotten also testified that when police burst through his bedroom door "screaming and yelling and . . . pointing guns at [him,]" he "wasn't asleep anymore . . . ." As the sole trier of fact and judge of credibility, the trial court was free to believe or disbelieve all or any of Cotten's testimony, even if uncontroverted. *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000). Based on the evidence before it, the trial court was well within its purview to conclude that Cotten was awake and alert when the *Miranda* warnings were administered to him.

Cotten has failed to demonstrate that the trial court erred in denying his motion to suppress on the basis that the State did not satisfy its burden by a preponderance of the evidence to establish that he waived his constitutional and statutory rights voluntarily, knowingly, and intelligently.

Cotten's second issue is overruled.

### SECOND STATEMENT

In his third and final issue, Cotten argues that the trial court erred in failing to suppress his second statement because the warnings required by *Miranda* and Article 38.22 were not read to him again before he was questioned at the police station. We disagree.

*Applicable Law*

In a situation in which a suspect is warned about his *Miranda* rights, a break in the questioning occurs, and questioning resumes without new *Miranda* warnings, the *Miranda* warnings administered in the first interview remain effective as to admissions made during the second interview if, in the totality of the circumstances, the second interview is essentially a continuation of the first. *Bible v. State*, 162 S.W.3d 234, 241-42 (Tex.Crim.App. 2005); *Jones v. State*, 119 S.W.3d 766, 773 n.13, 795 (Keller, P.J. concurring)(Tex.Crim.App. 2003), *cert. denied*, 542 U.S. 905, 124 S.Ct. 2836, 159 L.Ed.2d 270 (2004); *Ex Parte Bagley*, 509 S.W.2d 332, 337-38 (Tex.Crim.App. 1974); *Franks v. State*, 712 S.W.2d 858, 860-61 (Tex.App.--Houston [1st Dist.] 1986, pet. ref'd). In determining whether *Miranda* warnings previously administered remain effective in a subsequent interview, we consider: (1) the passage of time; (2) whether the interviews are conducted by different people; (3) whether the interviews relate to different offenses; and (4) whether the suspect is asked during the second interview if he received the warnings earlier, if he remembers the warnings, and if he wishes to invoke his rights. *Bible*, 162 S.W.3d at 242; *Jones*, 119 S.W.3d at 773 n.13.

### *Discussion*

Under the totality of the circumstances, the two sessions of questioning were essentially a single interview for the purposes of *Miranda* and Article 38.22; therefore, the *Miranda* warnings administered during Cotten's first interview were still effective during his second interview. Cotten's second session of questioning began approximately two hours after his first session of questioning began.[5] Although each session took place at different locations, the same law enforcement officer—Detective Anderson—administered the warnings and led the questioning in

---

[5] Cotten signed the "MIRANDA WARNING" card at 9:56 a.m. during his first interview and initialed the same card at 11:50 a.m. during his second interview.

both sessions, and both sessions focused on the same set of crimes—counterfeiting and forgery. Moreover, before any questioning began at the second session, Detective Anderson obtained Cotten's acknowledgment that he had previously been given warnings and Cotten's assent to continue the "conversation [they] started today."

Cotten argues that the second session "was a separate and independent interrogation" because "[t]he location changed dramatically" and "[t]he individuals present had changed dramatically." He is mistaken. Although each session took place at different locations, the second one occurred within two hours of the first one, concerned the same subject, and began with Cotten acknowledging the *Miranda* warnings he received previously. And though Cotten asserts that the individuals at the second session were dramatically different than those at the first one, two of the three law enforcement officials involved in the first session—Detective Anderson and Agent Holloway—were involved in the second one.

Cotten has failed to show that the trial court erred in denying his motion to suppress on the basis that he was not given the warnings required by *Miranda* and Article 38.22 before being questioned at the police station.

Cotten's third issue is overruled.

## CONCLUSION

Having overruled all of Cotten's issues, we affirm the trial court's judgment.

December 4, 2013
                                        YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)

9