

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00658-CR

James E. **SALDAÑA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 12, Bexar County, Texas
Trial Court No. 365341
Honorable Scott Roberts, Judge Presiding

Opinion by:  Rebeca C. Martinez, Justice

Sitting:  Sandee Bryan Marion, Chief Justice
Rebeca C. Martinez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  June 17, 2015

AFFIRMED

James Saldaña appeals his conviction for the misdemeanor offense of driving while intoxicated, alleging that the trial court erred in denying his motion to suppress.  We affirm the judgment of the trial court.

### BACKGROUND

At approximately 12:58 a.m. on June 26, 2011, Alamo Heights Police Officer Christopher Torres was travelling southbound on Broadway Avenue.  While stopped at a red light with the windows rolled down, he heard a loud bang and looked to his left where he observed Saldaña's

truck exiting a parking lot. Torres turned left onto the 100 block of Elizabeth to further investigate what may have caused the noise. As he turned, he saw Saldaña's truck stop "somewhat in the middle of the roadway" and both Saldaña and his passenger exit the vehicle and walk to the rear of the truck. Saldaña and his passenger were outside the vehicle and appeared to be looking for some damage on the rear of the truck. To Torres, this conduct corresponded to the loud bang he heard while stopped at the red light because it indicated that Saldaña might have struck something in the parking lot from which he exited. At this point, Torres stopped directly behind the truck and activated his emergency lights. Torres testified that he was not initiating a traffic stop; rather, he stopped in order to check on Saldaña's welfare. According to Torres, he exited his vehicle and approached Saldaña to ask, "Is everything okay?" Upon encountering Saldaña, Torres immediately detected signs of intoxication. Thereafter, Torres conducted a DWI investigation resulting in Saldaña's arrest.

Saldaña filed a pretrial motion to suppress his seizure by police. During the course of the suppression hearing, Torres emphasized that the primary purpose of the stop was to conduct a welfare check "to make sure [Saldaña and his passenger] didn't need any type of assistance." The trial court denied Saldaña's motion to suppress. The trial court orally made findings of fact and conclusions of law on the record. The trial court found that the testimony of the police officer was credible, and therefore concluded that the officer had legal justification to approach Saldaña's vehicle and turn on his lights and investigate further what was happening. The trial court did not make a legal basis for its ruling, stating, "whether it was community caretaking function or whether it was traffic control or whether it was to see why somebody had stopped their vehicle in the road and exited the vehicle, I'll leave that up to whomever, but I think the police officers have the right to do that in this case." Pursuant to a plea agreement, Saldaña pled guilty to driving while intoxicated. The trial court sentenced Saldaña to six months' confinement, but suspended the

sentence and placed him on probation for one year. On appeal, Saldaña contends the trial court abused its discretion in denying his motion to suppress the evidence obtained as a result of the illegal search and seizure of his person.

## STANDARD OF REVIEW

We review a motion to suppress evidence under a bifurcated standard. *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013). The trial judge's determination of historical facts is granted almost total deference when supported by the record, particularly if the findings of fact are based on credibility and demeanor. *Miller v. State*, 393 S.W.3d 255, 261 (Tex. Crim. App. 2012). The appellate courts should afford the same amount of deference to the trial court's rulings on application of law to fact questions, also known as "mixed questions of law and fact," if the ultimate question turns on an evaluation of credibility and demeanor of a witness. *See id.* at 262-63. However, any mixed questions of law and fact that do not turn on the evaluation of credibility and demeanor are reviewed *de novo*. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Application of the law of search and seizure, in determining the reasonableness of a temporary detention, is a mixed question of law and fact that is also reviewed *de novo*. *Kerwick*, 393 S.W.3d at 273. Additionally, all purely legal questions are reviewed *de novo*. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011).

## DISCUSSION

The Fourth Amendment protects citizens against unreasonable searches and seizures. U.S. CONST. amend. IV; *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). A warrantless search or seizure is unreasonable unless the search or seizure falls within an exception. *Katz v. United States*, 389 U.S. 347, 357 (1967). State and local law enforcement officers frequently engage in "community caretaking functions" that are "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413

U.S. 433, 441 (1973). Accordingly, the Supreme Court has recognized that in the context of such community caretaking activities, there are circumstances where warrantless searches or seizures by law enforcement may be reasonable, and therefore consistent with the Fourth Amendment. *See id.* at 447-48.

The Texas Court of Criminal Appeals adopted the community-caretaking exception to the warrant requirement in *Wright v. State*, 7 S.W.3d 148, 151 (Tex. Crim. App. 1999). The court stated that "[a]s part of his duty to 'serve and protect,' a police officer may stop and assist an individual whom a reasonable person—given the totality of the circumstances—would believe *is in need of help.*" *Id.* (emphasis added). To determine whether a police officer has properly invoked his community-caretaking function, we ask the following: (1) was the officer primarily motivated by a community-caretaking purpose; and (2) was the officer's belief that the individual was in need of help reasonable? *Gonzales v. State*, 369 S.W.3d 851, 854-55 (Tex. Crim. App. 2012).

Here, the record reflects that Torres had just heard a loud bang, when he saw Saldaña's truck pull out of the parking lot and stop on Elizabeth Street. As he proceeded to investigate further, Torres observed Saldaña and his passenger outside the vehicle looking at the rear of the truck. Torres testified that his intent in stopping was to perform a welfare check. He stated that as he initiated contact with Saldaña, he asked, "Is everything okay?" Torres stated that he turned his lights on for safety because the road was dark and Saldaña's truck was parked far from the curb. Thus, we conclude that Torres was motivated by a community-caretaking purpose and that the record supports the first prong of the *Gonzales* inquiry. As in *Gonzales*, we see no reason to second-guess the trial court's determination of an issue which is supported by the record and depends mainly on credibility and demeanor of a witness. *Id.*, at 855; *see Corbin v. State*, 85 S.W.3d 272, 277 (Tex. Crim. App. 2002).

Next, we must determine whether Torres's belief that Saldaña needed help was objectively reasonable. In *Wright*, the Court of Criminal Appeals listed factors to consider in determining the reasonableness of an officer's belief that an individual needs assistance: (1) the nature and level of distress exhibited by the individual; (2) the location of the individual; (3) whether or not the individual was alone and/or had access to assistance independent of that offered by the officer; and (4) to what extent the individual—if not assisted—presented a danger to himself or others. *Wright*, 7 S.W.3d at 151-52. These factors are non-exclusive, and are intended to assist courts in determining reasonableness; they are not elements of reasonableness. *Gonzales*, 369 S.W.3d at 855.

The first *Wright* factor—the nature and level of the distress exhibited by the individual—is afforded the greatest weight. *Corbin*, 85 S.W.3d at 277. The greater the nature and level of distress that is exhibited, the more likely the police involvement is a reasonable exercise of the community-caretaking exception. *Id*. Although the weight of the first factor is not dispositive, the remaining three factors help to give more definition to the first factor. *Id.*

After hearing a loud noise, Torres observed Saldaña stop his vehicle, exit it, and proceed to the rear of the vehicle. Although he did not know the exact nature of Saldaña's distress, it was reasonable, based on the inferences from his observations and the circumstances surrounding Saldaña's stop, for Torres to believe that when Saldaña pulled off the road he was experiencing some distress—either mechanical, collision-related, or otherwise. *See Gonzales*, 369 S.W.3d at 856 (officer is not required to know the specific distress an individual may be suffering). Any apparent distress was compounded by the vehicle's location on a dark street at approximately 1:00 in the morning. Although Saldaña was travelling with a passenger, the hour was late and the road was dark. Because Saldaña had some assistance in the form of a passenger, we need not examine

the fourth *Wright* factor. Based on our application of the applicable *Wright* factors, Torres could have reasonably believed that Saldaña was in need of assistance. *See Wright*, 7 S.W.3d at 152.

## CONCLUSION

We conclude that Torres met both prongs of the *Gonzales* inquiry and reasonably exercised his community-caretaking function in seizing Saldaña. *See Gonzales*, 369 S.W.3d at 854-55. Accordingly, the trial court did not abuse its discretion in denying Saldaña's motion to suppress. The judgment of the trial court is affirmed.

Rebeca C. Martinez, Justice

Do not publish