**AFFIRMED and Opinion Filed October 17, 2023**



**In the**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00599-CR**

**ALIX HENRY SANDERS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Criminal Court No. 3**
**Dallas County, Texas**
**Trial Court Cause No. MB17-34875**

## MEMORANDUM OPINION

Before Justices Carlyle, Smith, and Kennedy
Opinion by Justice Carlyle

Alix Henry Sanders appeals from his conviction for driving while intoxicated. We affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

Officers Brandon Bridge and Kyle Chaisson observed Mr. Sanders pull his car over to the shoulder of southbound Loop 12 in Irving at 1:47 a.m. on September 14, 2017. According to Officer Bridge, Mr. Sanders remained on the shoulder "for an inordinate amount of time with no hazards on." Officer Bridge said the officers pulled up behind the car and turned on their emergency lights so "no one smashe[d] into the back of [the car], as intoxicated drivers often do."

As Officer Bridge approached the car, he smelled alcohol and noticed that the driver's window was down. Body camera footage showed Mr. Sanders asleep behind the wheel, and Officer Bridge woke him by asking if he was alright and by knocking on the car. Officer Bridge had to ask multiple times if Mr. Sanders was alright and also asked if he knew where he was. Mr. Sanders did not know where he was when he awoke, and Officer Bridge testified his "eyes were very bloodshot and glassy." Officer Bridge asked if Mr. Sanders had been drinking at all that night, and he testified Mr. Sanders said, "yes," although the response is not audible in the video. Mr. Sanders asked if he was on 635, and Officer Bridge told him he was actually on Loop 12. Mr. Sanders then stepped out of the car, as requested.

Once Mr. Sanders was outside the car, Officer Bridge again asked if he had been drinking, and Mr. Sanders acknowledged he had two liquor drinks that night in North Plano. Officer Bridge ran Mr. Sanders's identification for warrants and then administered standard field-sobriety tests (SFSTs), all of which Officer Bridge testified Mr. Sanders failed. The body camera footage showed Mr. Sanders had difficulty following Officer Bridge's instructions, and had difficulty maintaining his balance during the SFSTs.

Following the SFSTs, the officers asked Mr. Sanders a few more questions, including why he was asleep on the side of the highway. Mr. Sanders replied that he pulled over to urinate. Only a few minutes later, however, Mr. Sanders said he did

not remember telling officers that he pulled over to urinate. At that point, the officers arrested Mr. Sanders for driving while intoxicated.

Based on the evidence at trial, including testimony from Officers Bridge and Chaisson, as well as their body camera footage, the jury convicted Mr. Sanders of driving while intoxicated. The trial court sentenced him to 120 days' confinement, suspended for one year with community supervision, and fined him $200.

On appeal, Mr. Sanders first argues the trial court erred by denying his motion to suppress all evidence because the officers lacked reasonable suspicion to approach and detain him to investigate an offense. The State counters that the officers were serving a community-caretaking function when they approached Mr. Sanders and thus did not need reasonable suspicion to initiate contact with him.

Police officers "have multiple responsibilities, only one of which is the enforcement of criminal law." *Byram v. State*, 510 S.W.3d 918, 920 (Tex. Crim. App. 2017) (quoting Debra Livingston, *Police, Community Caretaking, and the Fourth Amendment*, 1998 U. CHI. LEGAL F. 261, 261). The law contemplates that officers will, among other things, "aid individuals who are in danger of physical harm," "facilitate the movement of people and vehicles," and "assist people who cannot care for themselves." *Id.* To that end, officers "may stop and assist an individual whom a reasonable person—given the totality of the circumstances— would believe is in need of help." *Id.* at 922. When acting "in this community-

caretaking role, they are not engaged in the often competitive enterprise of ferreting out crime." *Id.* at 920 (cleaned up).

But officers "may encounter crime while engaged in their community-caretaking functions, and when they do, we expect them to take" appropriate action. *Id.* If an officer seizes a person in the process of exercising community-caretaking functions, the reasonableness of the "seizure sprouts from its dissociation from the competitive enterprise of ferreting out crime." *Id.* at 922. Consequently, "a police officer may not properly invoke his community-caretaking function if he is primarily motivated by a non-community caretaking purpose." *Id.* (quoting *Corbin v. State*, 85 S.W.3d 272, 276–77 (Tex. Crim. App. 2002)).

Determining whether an officer properly invoked a community-caretaking function involves a two-step inquiry: "(1) whether the officer was primarily motivated by a community-caretaking purpose; and (2) whether the officer's belief that the individual needed help was reasonable." *Id.* (quoting *Gonzales v. State*, 369 S.W.3d 851, 854–55 (Tex. Crim. App. 2012)). The initial inquiry is subjective and presents a factual question that turns on the credibility and demeanor of the officer testifying at the suppression hearing. *Id.* The second inquiry is an application-of-law-to-fact question. *Id.* at 923.

When, as here, the trial court has not issued written findings of fact, we assume "the trial court implicitly resolved all issues of historical fact and witness credibility in the light most favorable to its ultimate ruling." *Id.* at 922 (quoting *State*

*v. Saenz*, 411 S.W.3d 488, 495 n.4 (Tex. Crim. App. 2013)). And [w]e give 'almost total deference' to those findings of fact and credibility determinations." *Id.* (quoting *State v. Mazuca*, 375 S.W.3d 294, 307 (Tex. Crim. App. 2012)). We then review de novo the trial court's application of the law to those facts. *Id.*

Mr. Sanders argues the officers were not fulfilling a community-caretaking function when they approached him because their primary intent was to investigate a potential driving while intoxicated offense. But Officer Bridge testified at the suppression hearing that he approached Mr. Sanders's car because it presented a traffic hazard, noting that "[i]t's a vehicle on the side of the road with no hazards on," and because pulling over in that manner was suspicious under the circumstances, explaining that he wanted to "make sure that everyone -- everything was okay inside the car." "Either way," he said, "it's a vehicle and it's somewhere it really shouldn't be, and we're just making sure the public is safe."

Officer Bridge's body camera footage shows that when he initially approached Mr. Sanders, Mr. Sanders appeared unconscious, and Officer Bridge asked him multiple times whether he was alright before asking any questions concerning whether he had been drinking. And Officer Bridge testified unequivocally that he did not "contact the vehicle thinking that anybody was drunk."

Officer Bridge's testimony that the car pulling over was "suspicious" and the implication that there was a component of non-community-caretaking to his actions does not sufficiently detract from the record evidence demonstrating that the primary

motivation for contacting Mr. Sanders was community caretaking. Officer Bridge explained his concern was that someone in the car might be deceased or in distress, given that the driver pulled over onto the shoulder of a highway at almost 2:00 a.m. without engaging the car's hazards.

The trial court assessed Officer Bridge's credibility and demeanor, and it implicitly determined that the officers' contact with Mr. Sanders was primarily motivated by a community-caretaking purpose—a determination to which we owe "almost total deference." *Id.* And the evidence sufficiently supports the trial court's implicit determination in that regard. We thus turn to the second inquiry—whether it was objectively reasonable for Officer Bridge to believe someone in Mr. Sanders's car needed assistance. *See id.* at 923.

The court of criminal appeals has provided a non-exclusive list of considerations relevant to this determination, including: (1) "the nature and level of distress exhibited by the individual"; (2) the individual's location; (3) whether the individual was alone or had access to independent assistance; and (4) the extent to which the individual—if not assisted—presented a danger to himself or others. *Id.* Here, Officer Bridge observed Mr. Sanders pull onto the shoulder of a highway at nearly 2:00 a.m., staying there for "an inordinate amount of time" without engaging the car's hazards. It was objectively reasonable for Officer Bridge to believe an individual in the car needed assistance—whether medical or mechanical. And it was objectively reasonable for Officer Bridge to believe that, absent the officers'

–6–

intervention, the car would present a danger both to any individuals inside the car and to other motorists. It was thus objectively reasonable for the officers to approach the car, engage their emergency lights, and offer assistance.

As Officer Bridge approached the car, he noticed Mr. Sanders was unconscious behind the wheel. *See Jones v. State*, No. 05-16-00201-CR, 2017 WL 1549232, at *4–5 (Tex. App.—Dallas Apr. 28, 2017, pet. ref'd) (mem. op., not designated for publication) (concluding it was objectively reasonable for officer to check on parked vehicle and intervene after finding defendant asleep behind the wheel); *see also Velazquez v. State*, No. 02-22-00041-CR, 2023 WL 1860002, at *4 (Tex. App.—Fort Worth Feb. 9, 2023, no pet.) (mem. op., not designated for publication) ("An officer who . . . observes a person asleep or unconscious in a parked vehicle . . . has an objectively reasonable basis for believing that the person is in distress and needs help."). Officer Bridge asked multiple times if Mr. Sanders was alright, and Mr. Sanders did not know where he was when he awoke. Officer Bridge testified at the suppression hearing that he smelled alcohol and that Mr. Sanders's "eyes were very bloodshot and glassy." The trial court did not err by concluding the officers, while properly invoking their community-caretaking functions, developed reasonable suspicion to detain Mr. Sanders and investigate a possible driving while intoxicated offense. *See id.*

Mr. Sanders next contends the trial court erred by failing to exclude certain statements he made after Officer Bridge administered the SFSTs, arguing that he

–7–

was in custody at that point and made the statements without receiving the required warnings under *Miranda*[1] and code of criminal procedure article 38.22. It is undisputed that the officers did not provide the warnings. But the only statements Mr. Sanders identifies as necessitating exclusion are his statements that he pulled over to urinate and then that he did not remember telling officers he had pulled over to urinate.[2] We need not decide whether Mr. Sanders was in custody when he made those statements because if the trial court erred by failing to exclude them, we are convinced beyond a reasonable doubt that any error did not affect Mr. Sanders's conviction or punishment. *See* TEX. R. APP. P. 44.2(a).

The key inquiry in determining whether constitutional error is harmless is whether "there was a reasonable possibility that the error . . . moved the jury from a state of nonpersuasion to one of persuasion" on the relevant issue. *See Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000). We consider several non-exclusive factors including the error's nature, the extent to which the State emphasized the error, the error's probable implications, the weight the jury would likely give the error in its deliberations, and the presence of "overwhelming evidence." *Snowden v. State*, 353 S.W.3d 815, 818 (Tex. Crim. App. 2011). In the

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] Mr. Sanders also appears to complain generally that Officer Bridge testified Mr. Sanders "lost track of his thoughts" after the SFSTs and that Officer Bridge used Officer Chiasson's post-SFST questioning to "bolster" his own testimony. But Mr. Sanders did not timely object to Officer Bridge's testimony on these grounds and has thus failed to preserve any issue as to whether the testimony violated his Fifth Amendment or statutory rights. *See* TEX. R. APP. P. 33.1(a).

*Miranda* context, we must "judge the magnitude of the error in light of the evidence as a whole to determine the degree of prejudice to the defendant resulting from that error." *Jones v. State*, 119 S.W.3d 766, 777 (Tex. Crim. App. 2003).

Here, apart from Mr. Sanders's conflicting statements about pulling over to urinate, the jury received evidence that the officers saw Mr. Sanders pull his car over to the side of the highway, that he was asleep behind the wheel with his window open, and that he was confused about where he was when he was awakened. Officer Bridge testified that he "smelled a very large amount of alcohol inside the interior of the cabin," that Mr. Sanders slurred his speech, and that he "seemed dehydrated, lethargic, and his eyes were very bloodshot and glassy." Video evidence shows that Mr. Sanders admitted that he had two liquor drinks that night in Plano; notably he was stopped at 2:00 a.m. on the shoulder of Loop 12 in Irving on his way to Mansfield. And Officer Bridge testified that Mr. Sanders failed all three field sobriety tests—testimony corroborated to varying extents by the video evidence. Indeed, the video shows Mr. Sanders had difficulty following basic instructions and that he could not maintain his balance during the tests.

With respect to Mr. Sanders's conflicting statements about pulling over to urinate, the State mentioned them only once during closing, arguing they were evidence that Mr. Sanders drove the car—a fact for which there was significant additional evidence. The State did not argue that Mr. Sanders's statements were evidence of intoxication. Considering the evidence as a whole, we see no reasonable

possibility that Mr. Sanders's conflicting statements about pulling the car over to urinate "moved the jury from a state of nonpersuasion to one of persuasion" as to whether he drove the car while intoxicated. *See Wesbrook*, 29 S.W.3d at 119; *see also Funes v. State*, 630 S.W.3d 175, 183 (Tex. App.—El Paso 2020, no pet.) (assuming *Miranda* violation but concluding any error was harmless given the minimal emphasis by the State and the other "significant" evidence establishing defendant's guilt for driving while intoxicated). Nor do we see any reasonable possibility that the statements adversely affected Mr. Sanders's punishment, which was limited to community supervision. *See* TEX. R. APP. P. 44.2(a).

We affirm the trial court's judgment.


/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE

220599f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b)



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ALIX HENRY SANDERS,
Appellant

No. 05-22-00599-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Criminal
Court No. 3, Dallas County, Texas
Trial Court Cause No. MB17-34875.
Opinion delivered by Justice Carlyle.
Justices Smith and Kennedy
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 17th day of October, 2023.