

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| EMILEE SHAE GROH, | § | No. 08-24-00083- CR |
| Appellant, | § | Appeal from the |
| v. | § | 109th District Court |
| THE STATE OF TEXAS, | § | of Crane County, Texas |
| Appellee. | § | (TC# 23-052-DCCR-00019) |

## MEMORANDUM OPINION

Appellant Emilee Shae Groh pled guilty to and was convicted of possession of between one and four grams of methamphetamine. She appeals the trial court's denial of her motion to suppress. For the following reasons, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Groh was arrested and charged with possession of a controlled substance after methamphetamine was found during a warrantless search of her vehicle. She moved to suppress the evidence. At a hearing on the motion, the following evidence was presented:

On the morning of February 18, 2023, Crane Police Officer Sonny Williams was on regular patrol when he noticed Groh parked in front of a residence, seemingly asleep in her vehicle but sitting upright and in an awkward position. He decided to do a welfare check and as he approached

her car, he heard that it was running. After knocking three times on Groh's window, Williams was able to wake her. Groh told Williams that the house she was parked in front of belonged to her friend's boss. As he spoke to her, Williams could see a "bonglike smoking device" in the passenger side door. He searched the vehicle and found a "crystal-like substance" in the glove box and on the floorboard. Field testing showed that the substance was methamphetamine. The entire interaction and search was captured on Officer Williams's bodycam and the video was entered into evidence at the suppression hearing.

The trial court denied the motion to suppress without written findings. Groh later pled guilty to the charges and was sentenced by the trial court to four years. This appeal followed. Groh's sole issue on appeal challenges the ability of the officer to enter onto the curtilage of a home to approach her vehicle. The State counters that the car was not parked on the curtilage of the house and, alternatively, if it was on the curtilage, the officer entered the property under the community caretaking exception.[1]

## II. STANDARD OF REVIEW

We review rulings on a motion to suppress using a bifurcated standard. *Cole v. State*, 490 S.W.3d 918, 922 (Tex. Crim. App. 2016). When, like here, the trial court has not entered findings of fact, the facts that support the ruling are implied. *Id.* We give almost total deference to a trial court's findings of fact. *Id*. However, we review *de novo* the application of the law to the facts. *Id.* "We will sustain the judge's ruling if the record reasonably supports that ruling and is correct on any theory of law applicable to the case." *Id.*

---

[1] In its brief, the State also argues that once Officer Williams approached the vehicle, the plain view and automobile exceptions allowed him to search the vehicle without a warrant. *Keehn v. State*, 279 S.W.3d 330, 335 (Tex. Crim. App. 2009) (holding that the automobile exception allowed the warrantless search of a vehicle when items in plain view gave the officer probable cause to believe the vehicle contained contraband). Groh, however, does not challenge the officer's actions after he approached the vehicle.

2

## III. ANALYSIS

### A. Fourth Amendment protection from entry onto curtilage

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. This right against "unreasonable governmental intrusion" would be greatly reduced if police could enter the property around a home to observe activities "from just outside the front window." *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (citing *Silverman v. United States*, 365 U.S. 505, 511 (1961)). The Fourth Amendment therefore protects not just the home, but the area immediately surrounding and associated with the home, known as the curtilage. *Id.* (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984)).

Property is not included in the curtilage simply because it is private property. Rather, the curtilage is the area that is "intimately linked to the home, both physically and psychologically" and "to which the activity of the home life extends." *Id.* at 7 (quoting *California v. Ciraolo*, 476 U.S. 207, 213, (1986) and *Oliver*, 466 U.S. at 182 n. 12). In determining whether property is a curtilage, the primary question is whether the defendant had a reasonable expectation of privacy in the area as she would in a home. *United States v. Dunn*, 480 U.S. 294, 300 (1987) ("[T]he extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself."); *see also Sayers v. State*, 433 S.W.3d 667, 674 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Courts consider four factors when deciding if an area is curtilage:

> [1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is put, and [4] the steps taken by the resident to protect the area from observation by people passing by."

*Dunn*, 480 U.S. at 301.

The area where Groh was parked is pictured below, in a frame taken from the Officer Williams's bodycam video.



The house has a covered carport area; however, Groh was parked on a dirt strip immediately adjacent to the street. This was separated from the house by a yard. As the officer testified, the area is closer to the street than to the house. The area is not fenced and does not appear to be part of the yard. Because there is no vegetation in that area, it appears that it is commonly used for parking as the street itself has no shoulder on which to park. Finally, there are no indications that the owner of the home took steps to shield that area from the public view. Anyone driving or walking down the street, as Officer Williams had been, could observe the activities that occurred in that area.

Based on all these factors, we hold that the dirt area next to the street where Groh parked was not part of the house's curtilage in which Groh had a reasonable expectation of privacy. *Compare Buchanan v. State*, 129 S.W.3d 767, 774 (Tex. App.—Amarillo 2004, pet. ref'd) (appellant did not have a reasonable expectation of privacy in well-defined dirt driveway that went through an open gate and into a backyard where a mechanic business operated), *with State v. Betts*, 397 S.W.3d 198, 207 (Tex. Crim. App. 2013) (fenced backyard was curtilage); *State v. Serna*, 644 S.W.3d 712, 724 (Tex. App.—Austin 2021, pet. ref'd) (driveway under carport was curtilage);

4

*Sayers v. State*, 433 S.W.3d 667, 674 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (flowerbed directly beneath the window was curtilage).

Because Groh's car was not on the curtilage, the Fourth Amendment was not implicated when Williams approached entered that part of the property without a warrant.

### B. Community caretaking doctrine

Alternatively, this court holds that Officer Williams's entry onto the curtilage, if it were so found to be, was permissible under the community caretaking exception. Officers can make warrantless entries into a home when "they reasonably believe that a person is in need of immediate aid." *Mincey v. Arizona*, 437 U.S. 385, 392 (1978); *Laney v. State*, 117 S.W.3d 854, 855 (Tex. Crim. App. 2003) (en banc) ("as part of the police officer's community caretaking functions to protect and preserve life and prevent substantial injury, an officer may enter and search a private residence without a warrant for the limited purpose of serving those functions when it is objectively reasonable.")

Groh insists that Texas courts have not "decided the application of the 'community caretaking' exception and whether that justifies an intrusion on the curtilage." The curtilage of a home is "considered part of home itself for Fourth Amendment purposes." *Oliver*, 466 U.S. at 180. It therefore is protected to the same extent as a home but is also subject to the same exceptions to the warrant requirement. If an officer is permitted under the community caretaking exception to enter a home, he is also permitted to enter the curtilage.

To determine if the community caretaking exception applies to an officer's conduct, we first ask "whether the officer was primarily motivated by a community caretaking purpose," and, if so, we then ask "whether the officer's belief that the individual needs help was reasonable." *Gonzales v. State*, 369 S.W.3d 851, 854–55 (Tex. Crim. App. 2012).

**(1) Officer's motivation**

At the suppression hearing, Officer Williams explained why he was concerned for Groh's welfare: because of "the odd laying position that [Groh] was in. It wasn't normal. When somebody's sleeping in a vehicle, they lean the seat back, sleep in a vehicle. [Groh] was laying in an awkward upright position, leaning in a certain way. It just looked really odd to me." He said that he thought maybe Groh was having a medical issue. The bodycam video shows that once Williams was able to wake Groh, the first thing he told her after he identified himself was that he was doing a welfare to check to make sure that she was ok. Groh argues that the officer's stated reason for approaching Groh's vehicle—his belief that she may need medical help—was a pretext. She argues that, because of Crane's small population, Williams knew that she had a criminal history and that the vehicle was hers, and those facts "should lead to the inference that Williams actually approached the vehicle not out of genuine concern for Groh, but out of a desire that his unlawful search might [bear] fruit." Our role is not to decide which inference is correct. The trial court's implied findings are supported by the evidence, and we do not "second-guess the trial court's determination of an issue that is supported by the record and depends so much on credibility and demeanor." *Gonzales*, 369 S.W.3d at 855.

Groh characterizes Williams's actions as gathering evidence or investigating a crime, which are not justified under the community caretaking exception. It is true that when Williams saw the drug paraphernalia in plain view while speaking to Groh, his objective changed to assessing if any criminal laws were violated. However, when determining whether the entry onto the curtilage was justified, our focus is the officer's objective in making that *entry*, not in the later *search*. *Martin v. State*, 620 S.W.3d 749, 762 (Tex. Crim. App. 2021) ("This change in roles [from safety to investigation], however, does not negate the safety-related justification for the initial

entry."). The evidence supports the trial court's implied finding that Williams had a community caretaking purpose when he entered the curtilage even though he discovered probable cause to investigate a crime after the entry.

### (2) Williams's actions were reasonable

The factors considered in deciding if an officer's belief that an individual needs assistance are:

(1) the nature and level of the distress exhibited by the individual;

(2) the location of the individual;

(3) whether or not the individual was alone and/or had access to assistance independent of that offered by the officer; and

(4) to what extent the individual—if not assisted—presented a danger to himself or others.

*Wright v. State*, 7 S.W.3d 148, 151–52 (Tex. Crim. App. 1999) (en banc); *Gonzales*, 369 S.W.3d at 855.

Groh contends that there was no evidence she was in distress. Given that Groh had not reclined her seat, Williams was concerned that she was not just sleeping, but that there was a medical issue. We have previously noted that there are "a multitude of cases in which courts have concluded that an officer who either observed an unresponsive individual in a parked car, or received a report of such, had an objectively reasonable basis for believing that the individual was in distress and needed assistance." *Ramirez v. State*, No. 08-19-00097-CR, 2021 WL 3260630, at *5 (Tex. App.—El Paso July 30, 2021, pet. ref'd) (not designated for publication) (citing *Yocom v. State*, No. 02-03-00181-CR, 2004 WL 742888, at *5–7 (Tex. App.—Fort Worth Apr. 8, 2004, pet. ref'd) (not designated for publication); *King v. State*, No. 05-13-00178-CR, 2014 WL 2807993, at *4 (Tex. App.—Dallas June 18, 2014, no pet.) (mem. op., not designated for

7

publication); *Rochester v. State*, No. 02-03-00519-CR, 2004 WL 1798090, at *1 (Tex. App.—Fort Worth Aug. 12, 2004, no pet.) (mem. op., not designated for publication)); *see also Windham v. State*, No. 04-13-00284-CR, 2014 WL 769333, at *3 (Tex. App.—San Antonio Feb. 26, 2014, no pet.) (mem. op., not designated for publication) ("There is no question that responding to a report of an unresponsive person in a parked car, regardless of its location, falls within a police officer's community caretaking function."); *Velazquez v. State*, No. 02-22-00041-CR, 2023 WL 1860002, at *4 (Tex. App.—Fort Worth Feb. 9, 2023, no pet.) (mem. op., not designated for publication) ("An officer who either observes a person asleep or unconscious in a parked vehicle or receives a report of such a situation has an objectively reasonable basis for believing that the person is in distress and needs help."). Because Groh was asleep in a vehicle on the side of a street, the first two factors weigh in favor of finding that Williams's belief that Groh was in distress was reasonable.

Furthermore, Groh was alone in the car, with no one nearby. Although she was parked near a home, no one was outside and, at the time he approached the vehicle, Williams had no way to know if the occupants of the residence were home, knew Groh, knew she was parked outside, or would help her if she needed it. The third factor weighs in favor of the State. Finally, although Groh was not presenting a danger to herself or others when the Williams saw her, he did not know what her condition was and if she would wake up and attempt to drive. *Ramirez*, 2021 WL 3260630, at *7 ("a person who was previously unresponsive could suddenly wake up and put his foot on the gas pedal, thereby possibly causing an accident and endangering himself or others on the roadway."); *King*, 2014 WL 2807993, at *5 ("If King was incapacitated and accidentally set the vehicle in motion again, either he or others could have been injured."). If Groh had passed out

8

because of a medical emergency or because she was under the influence of drugs or alcohol, she could present a danger to herself and others if she woke up and decided to operate the vehicle.

Analyzing the facts of this case using *Wright* factors, we hold that Williams had a reasonable belief that Groh needed assistance.

We overrule Groh's sole issue.

## IV. CONCLUSION

Because Groh was not parked on the curtilage of the home, the Fourth Amendment's protections against governmental intrusion did not prevent Williams from approaching her vehicle. Even if Groh had parked on the curtilage, Williams would have been permitted to enter the property under the community caretaking doctrine. The judgment of the trial court is affirmed.

MARIA SALAS MENDOZA, Chief Justice

May 23, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.

(Do Not Publish)

9