

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| LEONARDO RAMIREZ, | § | No. 08-19-00097-CR |
| Appellant, | § | Appeal from the |
| v. | § | 41st Judicial District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC#20170D04632) |

## **O P I N I O N**

Appellant Leonardo Ramirez was found guilty by a jury of one count of driving while intoxicated, third offense. In his first two issues, Appellant contends that the trial court erred in denying his motion to suppress evidence that the State obtained as the result of a traffic stop. In his third issue, he contends that the trial court erred in failing to prepare written findings of fact and conclusion of law in a timely manner, and that this failure prejudiced his ability to prepare his case for trial. For the reasons set forth below, we affirm the trial court's judgment.[1]

---

[1] The trial court certified Appellant's right to appeal in this case, but the certification does not bear Appellant's signature indicating that he was informed of his rights to appeal and to file a pro se petition for discretionary review with the Texas Court of Criminal Appeals. *See* TEX.R.APP.P. 25.2(d). The certification is defective, and has not been corrected by Appellant's attorney or the trial court. To remedy this defect, this Court ORDERS Appellant's attorney, pursuant to TEX.R.APP.P. 48.4, to send Appellant a copy of this opinion and this Court's judgment, to notify Appellant of his right to file a pro se petition for discretionary review, and to inform Appellant of the applicable deadlines. *See* TEX.R.APP.P. 48.4, 68. Appellant's attorney is further ORDERED to comply with all of the requirements of TEX.R.APP.P. 48.4.

## I. FACTUAL BACKGROUND

At approximately 8:21 a.m. on the morning of August 30, 2017, a concerned citizen contacted 911 to report that she had observed a young man who was "slumped down" inside a grey truck at a stop sign at an intersection in her neighborhood. The caller stated that she was concerned that the man may have fallen asleep, fainted, or possibly suffered an "attack" of some kind. She did not, however, provide a description of the man and did not provide the license plate number of the vehicle.

El Paso County Sheriff's Deputy Omar Gonzalez was dispatched and arrived at the intersection at approximately 8:34 a.m., or some thirteen minutes after the 911 call was made. As he approached the intersection, he observed a gray truck pulling away from the stop sign, which he was certain was the vehicle described by the dispatcher; there were no other vehicles in the area at that time. After following the vehicle for less than a minute, he initiated his lights and pulled the vehicle over to conduct a welfare check on the driver.

As he approached the vehicle, Deputy Gonzalez observed the driver, whom he identified as Appellant, exit his truck and lift the hood. The encounter, which was recorded on Deputy Gonzalez's body camera, revealed that he initially asked Appellant if he was "okay," and explained to Appellant that he had pulled him over due to a report regarding a driver who was possibly asleep at a stop sign in a vehicle matching his truck's description. Upon speaking with Appellant, Deputy Gonzalez immediately observed signs that Appellant was intoxicated, noting that he had a smell of alcohol, had red, glossy and bloodshot eyes, was having difficulty keeping his balance, and appeared to be "very nervous." In addition, Appellant provided Deputy Gonzalez with contradictory and confusing answers to his questions regarding where he had been and why he was in the area. After Appellant repeatedly refused to submit to a field sobriety test, Deputy Gonzalez

2

placed him under arrest.[2]   Appellant was thereafter transported to the police station, where he submitted to an intoxilyzer breath test approximately 40 minutes later, which produced two results; one placed his blood-alcohol level at 0.146% and the other at 0.151% (and both over the legal limit of 0.08% for the offense of driving while intoxicated as set forth in the Texas Penal Code).[3] Appellant was subsequently indicted on one count of driving while intoxicated, third or more offense.[4]

## II.  PROCEDURAL BACKGROUND

### A.   The Motion to Suppress

Prior to trial, Appellant filed a motion to suppress the evidence that the State obtained as the result of the traffic stop, which he renewed twice at trial, arguing that the stop violated his Fourth Amendment rights.   Appellant argued that Deputy Gonzalez did not have reasonable suspicion to believe that he had engaged in any criminal activity or had committed any ticketable offense, or alternatively, that the deputy did not have an objectively reasonable basis for stopping him to conduct a welfare check pursuant to his community caretaking functions.   The State acknowledged that Deputy Gonzalez did not have reasonable suspicion of a criminal offense for the stop, but argued that the officer had an objectively reasonable basis for the stop as part of his community caretaking functions.

---

[2] Deputy Gonzalez also conducted a search of Appellant's vehicle incident to the arrest and found cocaine and marijuana in the vehicle.   If any charges were brought regarding those drugs, they are not part of this case.

[3] The Texas Penal Code provides that the term "intoxicated" means, among other things, "having an alcohol concentration of 0.08 or more."   TEX.PEN.CODE ANN. § 49.01(2)(B).

[4] The Texas Penal Code provides that the offense of impaired driving is a felony of the third degree if it is shown on the trial of the offense that the person has previously been convicted of "two times of any other offense relating to the operating of a motor vehicle while intoxicated . . ."   TEX.PEN.CODE ANN. § 49.09(b)(2). At the punishment phase of his trial, Appellant pled true to the allegation that he had previously been convicted of two or more offenses of driving while intoxicated.

3

During both a pretrial hearing on Appellant's motion, as well as at trial, Deputy Gonzalez testified that he conducted the traffic stop, not because he had observed Appellant commit any traffic violations or do anything "wrong," but for the sole purpose of conducting a "welfare check" due to the 911 dispatch he had received. In particular, he explained that he wanted to "make contact" with the driver to determine whether he was having "medical issues" or was otherwise in need of emergency services. He further explained that when he observed the driver pulling away from the stop sign--almost thirteen minutes after the 911 call first came in--he was concerned for both the driver's safety and the safety of others. Deputy Gonzalez explained that he was uncertain whether the driver had previously been asleep or had suffered a medical condition, such as a heart attack, while stopped at the intersection, giving rise to a concern that the driver might cause an accident under those circumstances.

Deputy Gonzalez testified, however, that shortly after speaking with Appellant and observing signs that Appellant was intoxicated, he no longer believed that Appellant was suffering from a medical emergency, and instead believed that he had been driving while intoxicated. At that point, he acknowledged that he was no longer conducting a welfare check and that his focus had shifted into a DWI investigation, which ultimately led to Appellant's arrest.

**B. The Request for Findings of Fact and Conclusions of Law**

Following the pretrial hearing, the trial court advised the parties that it would take Appellant's motion to suppress under advisement. Shortly thereafter, the trial court orally informed the parties that it was denying Appellant's motion to suppress, and Appellant filed two requests prior to trial for the court to enter written findings of fact and conclusions of law, as well as a notice of past due findings of fact and conclusions of law.[5]

---

[5] At a pretrial hearing held on January 25, 2019, four days before the trial, the trial court informed the parties that it had "already started the findings of fact," and that they would be "ready for purposes of an appeal." At that time,

4

Although the trial court did not file the findings or conclusions prior to trial, the trial court did agree to Appellant's request, over the State's objection, to provide the jury with an instruction on the factual question of whether Deputy Gonzalez had acted reasonably in stopping Appellant to conduct a welfare check under the community caretaking exception to the Fourth Amendment. In particular, the trial court instructed the jury that it could not consider any of the evidence obtained as the result of the stop if it had a reasonable doubt regarding whether Deputy Gonzalez was acting reasonably in carrying out his community caretaking function when he initiated the traffic stop. During closing arguments, the parties focused almost exclusively on whether the stop was reasonable under the community caretaking exception. Although the jury did not make any special findings on the issue, it appears that it rejected Appellant's claim that the stop was unreasonable, as it found Appellant guilty of driving while intoxicated and sentenced him to a fourteen-year prison term.

While Appellant's motion for new trial was pending the trial court filed its findings of fact and conclusions of law, finding, among other things, that Deputy Gonzalez was credible in testifying that he initiated the traffic stop to conduct a welfare check after he received the dispatch report about an unresponsive motorist. The trial court denied Appellant's motion for new trial and this appeal followed.

## III. MOTION TO SUPPRESS ISSUES

In Issues One and Two, Appellant contends that the trial court erred in denying his motion to suppress, contending that (1) there was no evidence in the record to support a finding that Deputy

---

Appellant moved for a continuance of the trial until the findings were prepared, but the trial court denied the motion, expressing its opinion that it was only required to make its findings and conclusions prior to appeal, and that the findings and conclusions would have no impact on the trial proceedings. Appellant does not argue that the trial court erred in denying his motion for continuance.

5

Gonzalez had a "reasonable suspicion" of criminal activity to initiate the traffic stop, and (2) Deputy Gonzalez's reasons for conducting a welfare check were not objectively reasonable under the circumstances. Because the State, and the trial court, only relied on the community caretaking exception to support the stop, Appellant's first issue (reasonable suspicion of criminal activity) is irrelevant to our analysis, and we instead focus solely on whether the stop fit within the community caretaking exception to the Fourth Amendment.

### A. Standard of Review

We apply a bifurcated standard of review when reviewing a trial court's ruling on a motion to suppress. *See State v. Martinez*, 570 S.W.3d 278, 281 (Tex.Crim.App. 2019). Under this standard, we give almost complete deference to the trial court's determination of historical facts, especially if those determinations are based on an assessment of a witness's credibility and demeanor. *Id*. A trial judge may believe or disbelieve all or any part of a witness's testimony, even if that testimony is not controverted, as the trial judge observes firsthand the demeanor and appearance of a witness, as opposed to an appellate court, which can only read an impersonal record. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000). We give the same deference to the trial court with respect to its rulings in applying the law to the facts, and to mixed questions of law and fact, if resolution of those questions depends on an evaluation of a witness's credibility and demeanor. *See Martinez*, 570 S.W.3d at 281; *see also State v. Woodard*, 341 S.W.3d 404, 410 (Tex.Crim.App. 2011) (the trial judge's determination of facts--if supported by the record--is afforded almost total deference when reviewing a suppression motion ruling). We therefore review those determinations for an abuse of discretion. *See Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex.Crim.App. 2013). However, for mixed questions of law and fact that do not turn on a witness's credibility or demeanor, as well as for purely legal questions, we conduct a de novo review. *See Martinez*, 570 S.W.3d at 281; *see also Woodard*, 341 S.W.3d at 410

6

(questions of law and fact that do not turn on credibility or demeanor and purely legal questions are reviewed de novo).

When, as here, the trial court makes specific findings of fact, we determine whether the evidence supports the fact findings when viewed in the light most favorable to the trial court's ruling. *See State v. Kelly*, 204 S.W.3d 808, 818 (Tex.Crim.App. 2006). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *See State v. Story*, 445 S.W.3d 729, 732 (Tex.Crim.App. 2014); *Turrubiate*, 399 S.W.3d at 150.

### B. Applicable Law: The Community Caretaking Exception

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures, and therefore, when a police officer initiates a warrantless traffic stop based on a belief that the driver has committed a ticketable offense or other crime, the officer must have a "reasonable suspicion" that such an offense has occurred. *See generally Kothe v. State*, 152 S.W.3d 54, 61 (Tex.Crim.App. 2004) (discussing the "reasonableness" requirements of a traffic stop); *Corbin v. State*, 85 S.W.3d 272, 276 (Tex.Crim.App. 2002) (recognizing that when an officer has reasonable suspicion or probable cause to conduct a traffic stop, the stop is generally considered "reasonable" under the Fourth Amendment). However, under certain circumstances, an officer may also initiate a warrantless traffic stop or otherwise detain a motorist based on the "exercise of his community caretaking function" to assist a motorist whom the officer reasonably believes may be in distress, without reasonable suspicion or probable cause that the motorist committed any offense. *See Corbin*, 85 S.W.3d at 276, *citing Wright v. State*, 7 S.W.3d 148, 151-52 (Tex.Crim.App. 1999). This exception, which is applicable to vehicle searches and seizures, is generally based on the recognition that police officers, in addition to their duties in investigating criminal offenses, also serve "community caretaking functions" while patrolling the streets.

7

In the caretaking role, police officers are "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. 433, 441, 447-48 (1973) (holding that an officer properly conducted a warrantless search of a disabled vehicle that was creating a nuisance on the highway as part of his "caretaking" duties). In effect, the community caretaking function imposes a duty on an officer to "serve and protect" the public, which in turn, allows an officer to "stop and assist" an individual in a vehicle without a warrant when a reasonable person, given the totality of the circumstances, would believe the individual was "*in need of help.*" *Corbin*, 85 S.W.3d at 276-77, *citing Wright*, 7 S.W.3d 276 (emphasis original); *see also Caniglia v. Strom*, 141 S. Ct. 1596, 1598 (2021) (while noting that there is no "standalone" or "freestanding" community caretaking exception to the Fourth Amendment for searches and seizures in the home, the court made it clear that it was not dispensing with the community caretaking exception that it previously carved out in *Cady* with respect to vehicles).

In determining whether an officer's belief that an individual needed help was reasonable under the community caretaking exception, Texas employs a two-step inquiry involving both a subjective and an objective component. *Corbin*, 85 S.W.3d at 277; *see also Byram v. State*, 510 S.W.3d 918, 922 (Tex.Crim.App. 2017) (reaffirming the two-step inquiry set forth in *Corbin*). First, the court must determine whether the officer was "primarily motivated" by a community-caretaking purpose, i.e., whether the officer stopped a vehicle "out of concern for the welfare" of the defendant. *Corbin*, 85 S.W.3d. at 277. Second, it must determine whether the officer's belief that the individual needed help was objectively reasonable. *Id.*; *see also Wright*, 7 S.W.3d at 151-152; *Gonzales v. State*, 369 S.W.3d 851, 854-55 (Tex.Crim.App. 2012). And in turn, the court in *Corbin* identified four non-exclusive factors to be used in evaluating whether the officer's belief was reasonable: "(1) the nature and level of the distress exhibited by the individual; (2) the location

of the individual; (3) whether or not the individual was alone and/or had access to assistance other than that offered by the officer; and (4) to what extent the individual, if not assisted, presented a danger to himself or others." *Corbin*, 85 S.W.3d at 277. The court further held that because the purpose of the community caretaking exception is to allow an officer to assist an individual whom the officer reasonably believes is in need of help, the first factor, i.e., the individual's nature and level of distress, although not dispositive, is entitled to the greatest weight. *Id.* Therefore, "[t]he greater the nature and level of distress exhibited, the more likely the police involvement will be a reasonable exercise of the community caretaking function." *Id.* And, in turn, the three remaining factors are to be considered in determining the individual's level of distress. *Gonzales*, 369 S.W.3d at 855. However, because a "stop under the *Cady* community-caretaking doctrine is distinct from a stop to render emergency aid . . . the distress exhibited by the individual need not suggest harm dire enough to trigger the emergency aid doctrine." *Byram*, 510 S.W.3d at 923.

### C. Application: Did the Community Caretaking Exception Apply?

#### 1. Deputy Gonzalez's subjective motivation

In its findings of fact, the trial court expressly found that Deputy Gonzalez was credible when he testified that he initiated the traffic stop in order to conduct a welfare check based on the call from dispatch, as he did not "know if something might be wrong with the driver, and he wanted to make sure everything was okay." The trial court further found that Deputy Gonzalez was therefore primarily "motivated by his community caretaking function" in initiating the stop.

Appellant does not challenge the trial court's finding regarding Deputy Gonzalez's subjective motivation, and we find ample support in the record for the finding. As set forth above, Deputy Gonzalez repeatedly testified that his primary, if not sole, reason for initiating the traffic stop was to conduct a "welfare check" on Appellant based on the report that he received and his concern that Appellant may have either fallen asleep at the stop sign, or may have suffered a

9

medical condition, and therefore needed assistance. The first question Deputy Gonzalez asked Appellant at the scene of the detention was whether he was "okay," and this line of questioning only lasted for as long as was necessary for him to ascertain that Appellant did not need assistance. *See Gonzales*, 369 S.W.3d at 855 (where trial judge concluded that officer was primarily motivated by his public-safety role in detaining driver who had pulled off roadway in an isolated area, appellate court would not "second-guess the trial judge's determination of an issue that is supported by the record and depends so much on credibility and demeanor."); *Windham v. State*, No. 04-13-00284-CR, 2014 WL 769333, at \*2 (Tex.App.--San Antonio Feb. 26, 2014, no pet.) (mem. op., not designated for publication) (officer was primarily motivated by concern that driver needed assistance where he had received a report that individual appeared to be unresponsive in a parked car, and his first question to the individual was whether she was "okay."); *Carrillo v. State*, No. 08-11-00086-CR, 2012 WL 2343664, at \*2-3 (Tex.App.--El Paso June 20, 2012, no pet.) (not designated for publication) (officer was primarily motivated by his community caretaking function, where officer questioned defendant who was found unresponsive in a parked car for as long as was necessary to determine whether she needed assistance). Accordingly, the trial court's finding regarding Deputy Gonzalez's subjective motivation is supported by the record.

### 2. *Whether Deputy Gonzalez's motivation was objectively reasonable*

We next consider whether Deputy Gonzalez's belief that Appellant needed assistance was reasonable under the factors set forth by the Court of Criminal Appeals in *Corbin*. The first factor is the nature and level of distress exhibited by Appellant prior to the traffic stop. Appellant argues that Deputy Gonzalez did not have an objectively reasonable belief that he was in "any kind of distress" prior to the stop, pointing out that Deputy Gonzalez testified that Appellant was already driving away in a lawful manner, without committing any traffic violations, as he approached the intersection. Accordingly, Appellant argues that Deputy Gonzalez's belief was based strictly on

10

assumptions and inferences that he was in distress, rather than on any objective facts or "trustworthy information" that would have led a reasonable person to believe that Appellant was a danger to himself or the community.

We disagree. Deputy Gonzalez had been informed by dispatch that a 911 caller had seen an individual in a vehicle matching the description of Appellant's truck "slumped down" in the vehicle at a stop sign, raising the possibility that the individual may have fallen asleep, fainted, or had suffered an "attack" of some kind. There are a multitude of cases in which courts have concluded that an officer who either observed an unresponsive individual in a parked car, or received a report of such, had an objectively reasonable basis for believing that the individual was in distress and needed assistance. *See e.g.*, *Yocom v. State*, No. 02-03-00181-CR, 2004 WL 742888, at *5-7 (Tex.App.--Fort Worth Apr. 8, 2004, pet. ref 'd) (not designated for publication) (finding that an officer reasonably exercised his community care-taking function by waking a driver who was alone and slumped over the wheel of his running vehicle in a bank parking lot); *King v. State*, No. 05-13-00178-CR, 2014 WL 2807993, at *4 (Tex.App.--Dallas June 18, 2014, no pet.) (mem. op., not designated for publication) (officer had an objectively reasonable belief that individual needed assistance when he observed the individual asleep in a parked car with the engine running); *Rochester v. State*, No. 02-03-00519-CR, 2004 WL 1798090, at *1 (Tex.App.--Fort Worth Aug. 12, 2004, no pet.) (mem. op., not designated for publication) (officer reasonably exercised his community care-taking functions when he woke a driver, who was alone and unconscious in a vehicle at a busy thoroughfare). Moreover, because Deputy Gonzalez arrived at the intersection approximately thirteen minutes after the 911 call came in, only to see the vehicle just pulling away from the stop sign, he had a reasonable basis to believe that the individual had been in his vehicle in an unresponsive condition the entire time, which would heighten his concern over the situation. *See, e.g.*, *Carrillo v. State*, No. 08-11-00086-CR, 2012 WL 2343664, at *2

11

(Tex.App.--El Paso June 20, 2012, no pet.) (not designated for publication) (officer had reasonable belief that driver was in distress and need of assistance, where driver, who was alone and "slumped over" in her vehicle, was stopped at an intersection through three green-light cycles, with the motor running); *Jones v. State*, No. 05-16-00201-CR, 2017 WL 1549232, at *3 (Tex.App.--Dallas Apr. 28, 2017, pet. ref'd) (mem. op., not designated for publication) (officer's belief that defendant needed help was objectively reasonable where officer noticed a vehicle stopped at the entrance to a parking lot with its reverse and brake lights on, and returned 30 minutes later and saw that the vehicle was sitting in the same spot).

In addition, Appellant has not cited any authority, nor are we aware of any, to support his contention that Deputy Gonzalez was required to personally observe Appellant exhibiting signs of distress when he arrived on the scene, or, stated conversely, that he could not consider the report that he received from dispatch in forming his belief that Appellant was in distress and in need of assistance. *See generally Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex.Crim.App. 2011) (recognizing that a "detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain" an individual, and that an officer may rely in part on information as relayed by a 911 dispatcher, who is "ordinarily regarded as a 'cooperating officer' for purposes of making this determination."). Nor was Deputy Gonzalez required to know the exact nature and level of Appellant's distress prior to initiating a stop; to the contrary, as the Court of Criminal Appeals has held, "[c]ourts have never required an officer to know, with any degree of certainty, the specific distress an individual may be suffering" in performing his community caretaking functions, and instead, an officer is entitled to make "inferences" from the information that he has in determining whether an individual needs assistance. *See Gonzales*, 369 S.W.3d at

12

856.[6]  In fact, as Deputy Gonzalez explained, it was precisely because he could not see Appellant's demeanor as he drove away--and was therefore unable to determine whether Appellant was able to safely operate his vehicle--that he believed it was necessary to conduct the welfare check.

As well, contrary to Appellant's assertion, the fact that Deputy Gonzalez ultimately determined upon completion of his welfare check that Appellant was not in any distress, but was instead under the influence of alcohol, does not mean that the deputy's *initial* belief that he was in distress was not objectively reasonable. *See Rodgers v. State*, No. 07-14-00054-CR, 2014 WL 3647786, at *5 (Tex.App.--Amarillo July 22, 2014, pet. ref'd) (mem. op., not designated for publication) (while the facts later demonstrated that appellant, who was initially observed to be unresponsive in her vehicle, became at least somewhat conscious when he approached her, the officer's initial observations lent credence to her belief that appellant might pose a danger to herself); *Villanueva v. State*, No. 08-08-00140-CR, 2010 WL 939665, at *2 (Tex.App.--El Paso Mar. 17, 2010, no pet.) (not designated for publication) ("Whether an actual emergency existed at the time of the officers' warrantless entry is irrelevant," where the officers reasonably believed that an emergency existed at the time of their entry).  Accordingly, we find that Deputy Gonzalez reasonably believed that Appellant was suffering from a sufficiently serious level of distress that triggered his community caretaking functions.

The next two factors also support such a finding.  As set forth above, Appellant was alone in his vehicle, and was in an area where there were no other vehicles in sight when Deputy Gonzalez arrived.  In addition, the area in which Appellant stopped his vehicle also appeared

---

[6] And, as our sister court has recognized, the contention that an officer must know all operative facts is "nonsensical given the purpose of the community caretaking exception," as the "entire reason for the detention is to ascertain whether this member of the public needs assistance."  *Rodgers v. State*, No. 07-14-00054-CR, 2014 WL 3647786, at *3-5 (Tex.App.--Amarillo July 22, 2014, pet. ref'd) (mem. op., not designated for publication)*, citing Corbin*, 85 S.W.3d at 276.

13

relatively isolated, making it questionable whether Appellant would have been able to obtain assistance if needed.  *See Gupta v. State*, No. 05-16-00468-CR, 2017 WL 118103 (Tex.App.--Dallas Jan. 12, 2017, no pet.) (mem. op., not designated for publication) (officer's belief that an unresponsive driver was in need of assistance was objectively reasonable where the driver was alone in a vehicle, and in an isolated location where there was no nearby assistance available); *Rodgers*, 2014 WL 3647786, at *4   (it was reasonable for officer to believe motorist needed help where officer observed the motorist, alone in a vehicle, slumped over the steering wheel at 2 a.m. in the morning as "these observations are the earmark of a need for assistance"); *Gonzales*, 369 S.W.3d at 856 (officer's concern for defendant's safety was compounded by the location in which he was parked, which the officer described as being in a "fairly isolated area.").

As well, the fourth factor--whether Appellant posed a danger to himself or others--also supports a finding that Deputy Gonzalez had an objective belief that Appellant was in need of assistance at the time he initiated the stop.   Although Appellant had already begun driving away prior to the traffic stop, Deputy Gonzalez nevertheless had reason to believe, given the report that he received, that Appellant might pose a danger to himself or others in operating his vehicle.   As Deputy Gonzalez testified, based on his training, a person who was previously unresponsive could suddenly wake up and put his foot on the gas pedal, thereby possibly causing an accident and endangering himself or others on the roadway.  *See generally Rodgers*, 2014 WL 3647786, at *1 (officer reasonably believed that appellant was a danger to herself or others where she had been seen slumped over the steering wheel in her vehicle, and then began backing her vehicle in the direction of the officer's police vehicle); *Jones*, 2017 WL 1549232, at *4 (finding officer's concern that unresponsive driver could have caused an accident to be objectively reasonable, where driver could have pulled forward or turned into a parking area, thereby endangering himself or others).

Accordingly, based on the above factors and the totality of circumstances, we conclude

14

that Deputy Gonzalez had an objectively reasonable basis for exercising his community caretaking functions in initiating the traffic stop.   Therefore, the trial court did not err in denying Appellant's motion to suppress the evidence that the State obtained as the result of the stop.

Appellant's Issues One and Two are overruled.

## IV.   ANY DELAY IN ENTERING FINDINGS OF FACT AND CONCLUSIONS OF LAW IS MOOT

In Issue Three, Appellant contends that the trial court's failure to make timely findings of fact and conclusions of law prior to trial in response to the two requests that he made prejudiced his ability to prepare his case for trial in violation of his Fifth and Sixth Amendment rights.   He therefore contends that we should reverse the trial court's judgment of conviction and remand for a new trial.

In support of his argument, Appellant relies primarily on the Court of Criminal Appeals' opinion in *State v. Cullen*, 195 S.W.3d 696 (Tex.Crim.App. 2006), in which the court looked to Rule 297 of the Texas Rule of Civil Procedure in holding that after a trial court rules on a motion to suppress in a criminal case, it should file requested findings of fact and conclusions of law within twenty days after such a request is made.   *Id.* at 699-700, *citing* TEX.R.CIV.P. 297.   In that case, however, the trial court did not enter *any* findings of fact and conclusions of law on its suppression ruling, as requested by the losing party, and the court therefore found that the record was not adequate to allow the appellate court to review the propriety of the ruling.   *Id.* at 698. Significantly, the court in *Cullen* did not reverse the judgment of the trial court or order a new trial due to the lack of timely-filed findings and conclusions, as Appellant would have us do; instead, the court remanded the matter to the appellate court with instructions to order the trial court to enter "essential" findings of fact and conclusions of law to provide it with an adequate basis to review the trial court's suppression ruling.   *Id*. at 699-700.   In other words, the problem that the

15

court identified was the lack of necessary findings of fact and conclusions of law for purposes of appellate review, rather than for purposes of trial preparation, with the only cure being a remand for the trial court to prepare its findings and conclusions.

Appellant has cited no cases, nor are we aware of any, in which a court has reversed a judgment of conviction and ordered a new trial due to a trial court's failure to timely file requested findings and conclusions. To the contrary, in every case we have found, the remedy for a failure to file requested findings and conclusions was to abate the appeal and remand to the trial court for the entry of such. *See, e.g.*, *State v. Elias*, 339 S.W.3d 667, 677 (Tex.Crim.App. 2011) (holding, consistently with *Cullen*, that a remand for additional findings of fact was appropriate in order to "assure that appellate review of the legality of the initial stop will be based upon the actual findings of the judicial entity to which the fact finding function is institutionally assigned—the trial court"); *State v. Saenz*, 411 S.W.3d 488, 495 (Tex.Crim.App. 2013) (remanding to the trial court for completion of findings of fact where the findings were inadequate to allow appellate court to make the ultimate legal determination of whether appellee was in custody at the time of challenged statements); *Villalobos v. State*, No. 08-17-00184-CR, 2019 WL 3940967, at *4 (Tex.App.--El Paso Aug. 21, 2019, no pet.) (not designated for publication) ("When a trial court fails to issue essential findings, the appropriate remedy is to abate the proceedings and remand the case to the trial court for additional findings sufficient for review."). And here, as the trial court has already prepared detailed findings of fact and conclusions of law, there is no remedy we can afford Appellant. We consider this issue to be moot. *See, e.g.*, *Rocha v. State*, 16 S.W.3d 1, 10 (Tex.Crim.App. 2000) (defendant's claim that the trial court erred by failing to file written findings of fact and conclusions of law was rendered moot where trial court entered its findings and

16

conclusions after appellate court abated appeal and remanded to the trial court for entry of such).[7]

And finally, although Appellant claims that he was prejudiced in his ability to prepare for trial due to the trial court's failure to file its findings and conclusions in a timely manner prior to trial, he has provided no argument on this issue, or otherwise explained why he believes that he was prejudiced in this regard. He does not complain that the jury instruction would have been any different, or that he would have elicited any different or additional testimony in light of the findings that the trial court made post-trial.

Appellant's Issue Three is overruled.

## V. CONCLUSION

The trial court's judgment is affirmed.


JEFF ALLEY, Justice

July 30, 2021

Before Rodriguez, C.J., Palafox, and Alley, JJ.

(Do Not Publish)

---

[7] Other courts have reached a similar conclusion that a trial court's failure to timely enter findings and conclusions is rendered moot when the trial court later enters the findings. *See Longoria v. State*, No. 13-15-00173-CR, 2016 WL 4045510, at *3 (Tex.App.--Corpus Christi July 28, 2016, no pet.) (mem. op., not designated for publication); *McKnight v. State*, No. 01-09-00852-CR, 2011 WL 2923856, at *4 (Tex.App.--Houston [1st Dist.] July 21, 2011, pet. ref'd) (mem. op., not designated for publication); *Okunno v. State*, No. 14-07-00680-CR, 2008 WL 4585239, at *7 (Tex.App.--Houston [14th Dist.] Oct. 16, 2008, pet. ref'd) (mem. op., not designated for publication); *Jones v. State*, No. 02-02-363-CR, 2003 WL 21513624, at *2 (Tex.App.--Fort Worth July 3, 2003, no pet.) (mem. op., not designated for publication).